IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons**<br><br>**Plaintiffs(s)**<br>v.<br><br>**Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company**<br><br>**Defendant(s)** | **Civil Action No: 1:20-cv-00365-CCC**<br><br>**(Hon. Christopher C. Conner, C.J.)** |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' DAUBERT MOTION TO PRECLUDE PLAINTIFF'S EXPERT, ROGER SPADT, FROM OFFERING OPINIONS REGARDING THE CAUSE OF THE FIRE

Pursuant to this Court's Policies and Procedures, Plaintiff, Allstate Property and Casualty Insurance Company a/s/o Duane and Sherri Koons, by and through its attorneys, de Luca Levine, hereby file opposition to Defendants' *Daubert* motion to preclude Plaintiff's expert, Roger Spadt, from offering opinions regarding the cause of the fire. Defendant's motion should be denied because Plaintiff's expert's testimony meets or exceeds the *Daubert* standard.[1]

### I.      PROCEDURAL HISTORY

This matter was originally filed in the Lebanon County Court of Common Pleas. The case was commenced on January 9, 2020 by way of a Complaint. *See Defendants' Exhibit C*. On March 2, 2020, Defendants' removed the matter from the Lebanon County Court of Common Pleas to the United States District Court for the Middle District of Pennsylvania based on diversity jurisdiction and the amount in controversy. Thereafter, the parties made Rule 7.1 and Rule 26 disclosures, submitted a joint case management plan and exchanged written discovery.

---

[1] Plaintiff hereby incorporates by reference as if fully set forth at length herein Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment, Plaintiff's Statement of Disputed Facts with Additional Material Facts Precluding Summary Judgment and the Exhibits filed by Plaintiff and Defendant.

Fact witnesses were deposed[2] before the expiration of the discovery deadline. Expert witness depositions were also completed[3] after the disclosure of expert reports, including Plaintiff's experts' rebuttal reports[4].

Defendants have now filed three *Daubert* Motions related to Plaintiff's two experts, Roger Spadt and Michael Zazula, along with a Motion for Summary Judgment. For the reasons set forth herein, all three *Daubert* Motions and the Motion for Summary Judgment should be denied.

## II.   COUNTER STATEMENT OF FACTS

Duane Koons is a Sergeant for the North Lebanon Township Police Department and is part of Lebanon County's accident reconstruction team. *See Defendants' Exhibit B at N.T. 7:9 to 8:4.* Mr. Koons' wife, Sheri Koons, is a sales associate for Home Depot. *See Defendants' Exhibit D at N.T. 13:6-13.* The couple married in 2008. *See Defendants' Exhibit D at N.T. 15:14-19.* Mr. and Mrs. Koons have resided at 1780 Ashton Drive in Lebanon since 2009, which is their primary residence. *See Defendants' Exhibit D at N.T. 15:4-13 & 15:23 to 16:1.* The couple has five children, ages thirty-one through thirty-six. *See Defendants' Exhibit D at N.T. 16:14-22.* They also own a vacation home in Virginia. *See Defendants' Exhibit D at N.T. 47:6 to 48:11.* In 2018, the couple would vacation in Virginia over the summer about every other weekend. *See Defendants' Exhibit D at N.T. 47:6 to 48:11.*

---

[2] The fact witnesses deposed were Plaintiffs, Duane and Sheri Koons, Defendants' Corporate Designee, H. Richard Bowles and Glenn Lebanon Fire Chief, Brian Vragovich.
[3] The expert witnesses deposed were Plaintiff's experts, Roger Spadt and Michael Zazula, and Defendants' experts, Eileen H. Lynn and Donald J. Hoffman.
[4] Defendants failed to attach Roger Spadt's March 2, 2021 rebuttal report despite deposing him on the opinions and contentions therein likely because those opinions and contentions do not support the preclusion of Mr. Spadt's testimony under any standard. *See Plaintiff's Exhibit C.*

The couple purchased a new General Electric gas range in 2012 from Home Depot. *See Defendants' Exhibit B at N.T. 17:3-17 and Defendants' Exhibit D at N.T. 20:14-16, 21:1-4, 25:8-11, and 26:21 to 27:2.* It was installed in the couple's kitchen thereafter by Countryside Propane. *See Defendants' Exhibit B at N.T. 19:12-18.*

On June 6, 2018, Mrs. Koons left the couple's home in Lebanon for a four or five day weekend at their Virginia vacation home. *See Defendants' Exhibit D at N.T. 47:22 to 48:1.* Mr. Koons left the couple's Pennsylvania home on the same date. *See Defendants' Exhibit B at N.T. 30:7-15 & 42:23 to 43:20.* Although Mrs. Koons cleans the kitchen before each weekend trip to Virginia, there was no reason to believe that either Mr. Koons or Mrs. Koons had inadvertently turned on the gas range knobs to allow propane gas to escape, but Fire Chief, Brian Vragavich, had told Mr. Koons that at least one of the gas stove's knobs were turned on when he was one of the first people inside the home fighting the fire. *See Defendants' Exhibit B at N.T. 40:24 to 44:6.* The stove was last used on June 5, 2018 by Mrs. Koons. *See Defendants' Exhibit D at N.T. 77:22 to 78:3.*

### a. The Fire

On June 9, 2018, fire erupted in the Koons' home in Lebanon. *See Defendants' Exhibit D at N.T. 46:22 to 47:5.* The Koons' home was vacant at the time of the fire. *See Defendants' Exhibit D at N.T. 51:7-9.* There were no items on the countertop near the stove or anything directly on top of the stove that could catch fire. *See Defendants' Exhibit D at N.T. 54:7-20 & 55:13-18.* The Koons' neighbors, Ted and Vickie Hummel, called the fire department upon smelling smoke. *See Defendants' Exhibit D at N.T. 55:19 to 56:3.* Thereafter, one of Mr. Koons' partners, Sergeant Knight, delivered the bad news about the fire to Mr. and Mrs. Koons. *See Defendants' Exhibit D at N.T. 56:15-19 and Defendants' Exhibit B at N.T. 36:10 to 37:17.*

Mr. and Mrs. Koons then immediately made the four and a half hour drive back from Virginia to their Lebanon home. *See Defendants' Exhibit D at N.T. 58:1-14.* The Koons were told that the fire started in the kitchen by fire personnel, including Rusty Weitzell. *See Defendants' Exhibit D at N.T. 59:4 to 61:18 and Defendants' Exhibit B at N.T. 39:14 to 40:2 & 48:11 to 50:4.* The Koons were also told that the fire was caused by the stove knobs being turned on. *See Defendants' Exhibit D at N.T. 59:4 to 61:18 and Defendants' Exhibit B at N.T. 39:14 to 40:2 & 48:11 to 50:4.* There were no prior issues with the stove top or the oven prior to the fire. *See Defendants' Exhibit D at N.T. 35:13-20 and Defendants' Exhibit B at N.T. 23:2-12.* Mrs. Koons disliked the GE range because it burned her house. *See Defendants' Exhibit D at N.T. 94:4-6.* She now has a Samsung gas range. *See Defendants' Exhibit D at N.T. 87:22 to 88:6.*

### b. GE's Corporate Designee Testimony

GE provides no warnings or caution that the gas stove's burner knobs can be turned on inadvertently or as an unintended consequence of a consumer's action. *See Plaintiff's Exhibit A at N.T. 118:18 to 119:24.* There is nothing in the manual or elsewhere to inform a consumer that unintended operation of the stove can occur allowing the burner to activate and allow gas to flow. *See Plaintiff's Exhibit A at N.T. 120:19 to 121:18*. GE designed the knobs in a certain way in an attempt to keep people a certain distance from the knobs, presumably to inhibit accidental manipulation. *See Plaintiff's Exhibit A at N.T. 120:19 to 121:18*. A GE gas range under the "Monogram" product line allowed for accidental manipulation and unintended gas flow, resulting in a recall by GE. *See Plaintiff's Exhibit A at N.T. 138:3-15*. The burner knobs on the model at issue in our case could be unintendedly engaged to allow gas to flow before or after the electronic spark ignitor is activated. *See Plaintiff's Exhibit A at N.T. 131:1-132:12*. Further, GE no longer produces the exact model gas range the Koons had installed in their home. *See*

4

*Plaintiff's Exhibit A at N.T. 138:23 to 139:9*. There was a reasonable alternative to the push and turn design of the gas range burner knobs involved in this matter, but it was not adopted or implemented by GE.  *See Plaintiff's Exhibit A at N.T. 151:3-14.*

### c. Roger Spadt's Opinions

Mr. Spadt prepared two reports in this matter.[5]  First, Mr. Spadt authored a January 4, 2021 report wherein he opines that:

> Based upon the scene examinations, interviews, research, and the information to date, it is my opinion within a reasonable degree of professional certainty, that the fire of this incident did in fact originate within the kitchen of the dwelling located at 1780 Ashton Drive, Lebanon, PA 17046. The area of origin was further identified as being the area around the General Electric Company Model JGBP87SEM1SS propane range located along the west wall, to also include the west wall and its related interior space.
>
> In consultation with Engineering Consultant Michael Zazula, he indicated this fire was caused by the General Electric Company Model JGBP87SEM1SS propane range's right rear and left front burner control knobs not being in the "Off" position, which allowed the propane gas to flow from the burners' valves, thus becoming fugitive gas within the area of origin. Because propane gas is heavier than air and has a specific gravity of approximately 1.5 to 2.0, it will sink in air and likely accumulate in varied lower locations within the area of origin. The fugitive propane gas was likely ignited by the operating refrigerator.

*See Plaintiff's Exhibit B at 12.*

Second, Mr. Spadt authored a March 2, 2021 rebuttal report.  *See Plaintiff's Exhibit C.*  Both Mr. Spadt and Defendants' expert, Donald J. Hoffman, agree on the area of origin of the June 9, 2018 fire:

---

[5] Defendants only attached 13 of the 54 pages of Roger Spadt's January 4, 2021 Report, so Plaintiff has included a full copy of the January 4, 2021 Report as *Exhibit B*.  Likewise, Defendants did not attach any portion of Mr. Spadt's March 2, 2021 Rebuttal Report, but Plaintiff has attached it as *Exhibit C.*

5

### Page 9 of Hoffman's Report – Origin

*Origin*
*Based on the patterns observed in the kitchen and the analysis of the fire dynamics, the fire originated in the kitchen in the area of the gas range.*

**Comment:** Mr. Hoffmann identifies that the fire originated in the area of the gas range. Besides the range itself, there are many areas around the range. In varying sections of his report, he states the fire was a result of foodstuff or combustible materials left on the cooktop. He also mentions the damages noted inside the oven area. He names the area of origin without including the point of origin.

*See Plaintiff's Exhibit C at 6.* Mr. Spadt then rebuts Mr. Hoffman's cause determination without changing or modifying his original determination with regard to origin and cause as follows:

### Page 9 of Hoffman's Report - Cause

*Cause*
*The cause of the fire is gas range cooktop burner being left ON, unattended, allowing the ignition of foodstuff and or combustible material inappropriately left on the cooktop.*

**Comment:** Mr. Hoffmann does not specify, nor list evidence or proof of which burner was left on and unattended. Further, as I mentioned in earlier comments, Mr. and Mrs. Koons testified during their depositions that there were no items stored on the cooktop surface.

\*\*\*        \*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*

Lastly, if a burner was left on before Mr. and Mrs. Koons left for vacation two days before the fire and ignited foodstuff and/or combustibles left on the cooktop, logic would infer that the odor or smoke from the fire would have been discovered sooner than 2 days after the Koons' left for vacation. Mr. Hoffmann did not account for this timeframe in his report.

Based upon my review of the aforementioned documents, my opinions stated in my January 4. 2021 report remain consistent and unchanged.

*See Plaintiff's Exhibit C at 6 & 9.*

### III. COUNTER STATEMENT OF QUESTIONS

1. Whether Roger Spadt is qualified to offer an opinion on causation of the fire in this matter?

   *Suggested Answer: Yes.*

2. Whether Roger Spadt used a reliable methodology in reaching his fire causation opinion?

   *Suggested Answer: Yes.*

### IV. ARGUMENT

#### a. *Daubert* Standard

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. This has been interpreted to restrict expert testimony based on: (1) qualification, (2) reliability, and (3) fit. *See, e.g., Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir.2000).

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court described the district court's role under Rule 702 as gatekeepers of evidence and scientific testimony, "ensur[ing] that any and all scientific testimony or evidence is not only relevant, but reliable." *Dalton v. McCourt Electric*, 112 F. Supp. 3d 320, 324 (E.D. Pa. 2015) (citing *Daubert*, 509 U.S. 579 (1993)). An expert's opinion is reliable if it is based in sound methodology and technique, rather than subjective belief or unsupported speculation. *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir. 1994).

A "district court must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable" *Dalton*, 112 F. Supp. 3d 320, 325 (E.D. Pa. 2015) (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137 at 152 (1999)). Notably, this evaluation does not include an analysis of the expert's conclusion. Rather, the focus remains on the principles and methodology the expert employed. *Id.* at 744. If the principles and methodologies are reliable, then the conclusions should be allowed to be heard and evaluated by the fact finder. *Id.*

> [T]he evidentiary requirement of reliability is lower than the merits standard of correctness. As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process - competing expert testimony and active cross examination, rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

*USAA Cas. Ins. Co. v. Metro. Edison Co.,* No. 1:12-CV-1178, 2014 WL 3943706, at *4 (M.D. Pa. Aug. 12, 2014) (citing *United States v. Mitchell*, 365 F. 3d at 244 (3d Cir. 2004)). Regarding this preference, "the Third Circuit has emphasized that not only do the Rules of Evidence generally 'embody a strong preference for admitting any evidence that may assist the trier of fact,' but Rule 702 specifically 'has a liberal policy of admissibility." *Dalton*, 112 F. Supp. 3d 320, 325 (2015) (citing *Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir.2008)).

Previous courts have held that following the scientific method is reliable for purposes of Rule 702. *See e.g. State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 442 (E.D. Pa. 2013); *Community Ass'n Underwriters of Am., Inc. v. Rhodes Development Grp.,* 2013 WL 818596, at *11 (M.D. Pa. Mar. 5, 2013); *Hoang v. Funai Corp.,* 652 F.Supp.2d 564, 567, 570 (M.D. Pa. 2009).

### b. Roger Spadt is Fully Qualified to Offer his Opinions on Causation

Defendant argues that Plaintiff's expert, Roger Spadt, should have his testimony excluded because he lacks specialized knowledge about gas, gas accumulation, gas ranges, gas range design and propane incidents. Defendant argues that Mr. Spadt's lack of specialized knowledge related to the area of inquiry bars his causation opinion that the fire was "caused by the General Electric Company Model JGBP87SEM1SS propane range's right rear and left front burner control knobs not being in the "Off" position, which allowed the propane gas to flow from the burners' valves, thus becoming fugitive gas within the area of origin." *See Plaintiff's Exhibit B at 12.*

Plaintiff retained the services of Mr. Spadt, a Fire Investigator, because of his exemplary experience and extensive education in the fields in which he offers opinions and has testified in a United States District Court for the Eastern District of Pennsylvania matter in 2019. *See Plaintiff's Exhibit B at 53 (List of Professional Testimony).*

Mr. Spadt has over forty (40) years of firefighting experience and training, as well as twenty-eight (28) years of fire investigation experience. *See Plaintiff's Exhibit B at 43-52 (Curriculum Vitae).* He is a high school graduate with college courses at four different institutions of higher learning. *See Defendants' Exhibit E at N.T. 21:6-23:8.* He has extensive paid professional firefighting and investigative experience with the City of Reading from 2001 through 2021. *See Defendants' Exhibit E at N.T. 23:9-24:11.* Mr. Spadt was a Fire Chief and Fire Marshal for Lehigh Township Volunteer Fire Company from 1993 through 2021. *See Defendants' Exhibit E at N.T. 27:4-27:18.* He is also a Pennsylvania State Police Fire Marshal since 1990. *See Defendants' Exhibit E at N.T. 29:15-19.*

Mr. Spadt has been a Fire Investigator since 2015 with more than three hundred thirty-four (334) fire investigations performed. *See Defendants' Exhibit E at N.T. 32:10-13 & 36:5-21.* He has extensive training and experience in fire investigation science, including continuing education courses, passing exams, a certification as a Certified Fire Investigator (CFI) and a certification from the International Association of Arson Investigators (IAAI). *See Defendants' Exhibit E at N.T. 37:23 to 40:20.* He is also trained specifically in investigating appliance fires from cooking ranges involving electric and gas, as well as attending courses about fires resulting from natural gas and propane gas. *See Defendants' Exhibit E at N.T. 40:21-43:9.* In addition, Mr. Spadt has valuable hands on experience with appliance fires involving gas. *See Defendants' Exhibit E at N.T. 40:21-43:9.* Most significantly, Mr. Spadt has been involved in several similar case investigations for fire damage resulting from a fire originating at or near a gas range resulting from an inadvertent engagement of the gas burner knobs. *See Defendants' Exhibit E at N.T. 53:6-57:16.*

Mr. Spadt's expert knowledge is in fire investigation. *See Defendants' Exhibit E at N.T. 44:14-17.* He has never been the subject of a *Daubert* challenge or precluded from testifying in any case. *See Defendants' Exhibit E at N.T. 48:12-48:23 & 49:14-19.*

Defendants' attempts to preclude Mr. Spadt on his qualifications are without basis in law or fact. His education, experience, certifications, work history, prior investigations, course studies, training and adherence to NFPA 921 support his qualifications to render an opinion about the cause and origin of the fire in the Koons' home. Despite Defendants' assertions to the contrary, Mr. Spadt is not offering an opinion on the design of the gas range, propane gas, propane gas accumulation, gas ranges generally, and/or propane incidents. Instead, Mr. Spadt is offering a well-founded opinion on the cause and origin of a fire within the Koons' home.

Mr. Spadt has significant gas range experience as they relate to fire investigation, and, as is clear from his testimony, he also has extensive experience with electric ranges, which, when viewed from a fire investigation standpoint, have no serious differences related to the way they are investigated. *See Defendants' Exhibit E at N.T. 239:21 to 240:21*. He also has working knowledge of propane gas and how it tends to accumulate. *See Defendants' Exhibit E at N.T. 249:3-21*.

As can be gleaned from above, Mr. Spadt is educated, experienced and well versed in his respective field. *See Plaintiff's Exhibit B at 43-52 (Curriculum Vitae)*. Defendants' reliance on *Yazdani* is misplaced, as stated above, Plaintiff is not offering Mr. Spadt to opine regarding the design of the gas range, as that isn't even contained in his report, but Plaintiff is offering Mr. Spadt for his opinion on the cause of and origin of the fire at the Koons' home on June 9, 2018, something he has been qualified to do for nearly his entire life. As a result, there is no basis to preclude Mr. Spadt's testimony on the basis of his qualifications.

### c. Roger Spadt's Methods are Reliable

Plaintiff concurs with the case law cited by Defendants in their brief, i.e. an expert's testimony must be reliable and based on a reliable methodology. However, Defendants' argue that Mr. Spadt's methodology was unreliable for two reasons: (1) he blindly relied upon Michael Zazula's opinion that fugitive gas accumulated over a period of two days; and (2) he employed a negative corpus methodology, which has been rejected by the NFPA 921 and Pennsylvania Courts. Neither unreasoned argument is supported by the testimony, exhibits or the NFPA 921.

### i. Roger Spadt Did Not Merely Parrot Michael Zazula's Opinions

Defendants erroneously believe that a fire investigator cannot consult with another expert who has specialized knowledge to aid in the origin and cause determination. Under Defendants' theory of preclusion, each time Mr. Spadt rendered an opinion he would have to be an underlying expert in the subject matter that originated and/or caused the fire. For example, if an electric heater was in the origin area of the fire and was the cause of the blaze, under Defendants' theory Mr. Spadt would also need to be an expert in the field of electric heaters to render an opinion, and he could not consult with anyone, such as an electrical engineer. There is simply no way for a fire investigator to be an expert in every electronic, appliance, device or product that fails, this is why consultation with engineers frequently takes place, but such consulting doesn't inhibit a fire investigator from determining the origin or cause of a fire, which they are specifically trained to do. This would be contrary to the provisions of the National Fire Protection Association ("NFPA") Chapter 15, Section 5. *See Plaintiff's Exhibit D at 15.5 (Specialized Personnel and Technical Consultants) through 15.5.10 (Canine Teams).* In fact, fire investigators are specifically encouraged to engage and speak with consultants during the investigation process in order to determine origin, cause or both. *See Plaintiff's Exhibit D at 15.5.1 through 15.5.1.2.*

This is what occurred here. Mr. Spadt and Michael Zazula, Plaintiff's Engineering Consultant expert, investigated the matter together from June of 2018 to the present, including a June 22, 2018 scene investigation and a July 10, 2018 joint scene investigation with testing and evidence retention. *See Defendants' Exhibit E at N.T. 12:21 to 15:22; 160:10 to 164:7; 164:17 to 166:22; 184:8 to 185:24.* They also exchanged information thereafter. *See Defendants' Exhibit E at N.T. 187:1-6.* However, this does not mean Mr. Spadt was unable to make his own informed conclusions or opinions, as his testimony and report are contrary to these assertions.

*See Defendants' Exhibit E at N.T. 189:20 to 193:7 & 197:19 to 199:16*. Mr. Spadt did not parrot Mr. Zazula's opinions, but rather relied on information from Mr. Zazula to help form his own opinions. *See Defendants' Exhibit E at N.T. 189:20 to 193:7 & 197:19 to 199:16*; *See also Plaintiff's Exhibits B and C*.

In fact, Mr. Spadt formed his opinions within a reasonable degree of professional certainty as to the origin and cause of the fire. *See Defendants' Exhibit E at N.T. 213:19 to 215:16; See also Plaintiff's Exhibits B and C*. He did so after consulting with Mr. Zazula per the guidelines of the NFPA 921. *See Defendants' Exhibit E at N.T. 224:18 to 232:7; See also Plaintiff's Exhibits B and C*.

### ii. Roger Spadt Used the Scientific Method Pursuant to the NFPA 921

Defendants falsely assert that Mr. Spadt employed a negative corpus methodology in preparing his two reports and his cause opinion is therefore flawed and should be stricken. If Mr. Spadt's cause methodology was so flawed and employed a negative corpus methodology, why did Defendants not also challenge Mr. Spadt's origin determination, which was completed with the same methodology? Regardless, nowhere in Mr. Spadt's testimony or two reports did he state he used a negative corpus methodology or imply that such method was ever used. *See Plaintiffs' Exhibits B & C and Defendants' Exhibit E*. Defendants' counsel appears confused by the terminology set forth by Mr. Spadt, i.e. disproving a hypothesis v. eliminating or ruling out a theory under the NFPA 921.

Defendants' reliance on *Steffen* is misplaced. While an origin and cause expert could be excluded for failing to adhere to the NFPA 921 guidelines or using a negative corpus method, no expert who has employed the scientific method has ever been excluded from testifying. Mr. Spadt employed the scientific method in his investigation and report pursuant to the NFPA. *See*

13

*Defendants' Exhibit E at N.T. 61:22 to 62:15; See also Plaintiff's Exhibit D at 4.3.4, 4.3.5, and 4.3.6.* Mr. Spadt never used the word eliminate in his report, but instead disproved ignition sources per the guidelines of NFPA 921 and the scientific method. *See Plaintiff's Exhibit D at 19.6 to 19.6.5.2.* The NFPA 921, Chapter 19, Section 19.6.4, specifically requires that a fire investigator disprove, rather than confirm, a hypothesis. *See Plaintiff's Exhibit D at 19.6.4.* Likewise, the "process of elimination is an integral part of the scientific method." *See Plaintiff's Exhibit D at 19.6.5.* Mr. Spadt considered, tested and disproved 11 hypotheses in his report. *See Plaintiff's Exhibit D at 9-11.* Mr. Spadt followed the NFPA guidelines at all times.

Mr. Spadt revealed his methodology and use of the NFPA 921 at his deposition, which Defendants' have only parsed out selective self-serving passages, but a full reading of his testimony reveals strong adherence to the scientific method and NFPA 921 guidelines. *See Defendants' Exhibit E at 62:16 to 216:8.* Most notably, in preparation of his report, Mr. Spadt completed an investigation, which included a June 13, 2018 inspection, June 22, 2018 inspection with an engineer and a joint scene investigation with all parties present on July 10, 2018, as well as a review of all written discovery, oral discovery, reliance on NFPA 921, photos, observations, interviews of three people, GPS, weather data, 11 hypotheses, testing and consultation with an engineering consultant. *See Plaintiff's Exhibit B and C.* Mr. Spadt's investigation was thorough and clearly employed the scientific method pursuant to the NFPA 921 guidelines.

While the defense is focused on the red herring refrigerator, which merely ignited the fugitive gas released by the defective General Electric gas stovetop range, Mr. Spadt was focused on identifying the origin and cause of the fire. It is not that the refrigerator malfunctioned in anyway, but rather that the GE range failed to prevent the release of uncontrolled gas into a home for two days until that fugitive propane gas was ignited. Defendants fail to see the forest for the

trees, but instead focus on minute details that make little to no difference. What would it matter if a toaster or cellphone ignited the fugitive gas? It would not change the origin or cause of the fire, which will always remain as originating in "the area around the General Electric Company Model JGBP87SEM1SS propane range located along the west wall, to also include the west wall and its related interior space…" and that the "fire was caused by the General Electric Company Model JGBP87SEM1SS propane range's right rear and left front burner control knobs not being in the "Off" position, which allowed the propane gas to flow from the burners' valves, thus becoming fugitive gas within the area of origin." *See Plaintiff's Exhibit B and C.*

## V. CONCLUSION

Based on the reasons set forth above, Plaintiff respectfully submits that an Order denying Defendants' Daubert Motion to Preclude Plaintiff's Expert, Roger Spadt, from Offering Opinions Regarding the Cause of the Fire should be entered on the docket.

                                              **de LUCA LEVINE LLC**

                          BY: */s/Kevin M. Kelly*
                                **KEVIN M. KELLY**
                                PA ID: 87413
                                Three Valley Square, Suite 220
                                Blue Bell, PA 19422
                                215-383-0081
                                215-383-0082 (fax)
                                kkelly@delucalevine.com
                                **ATTORNEYS FOR PLAINTIFF**

**Dated:**  June 11, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons**<br><br>**Plaintiffs(s)**<br>v.<br><br>**Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company**<br><br>**Defendant(s)** | **Civil Action No: 1:20-cv-00365-CCC**<br><br>**(Hon. Christopher C. Conner, C.J.)** |

### CERTIFICATE OF SERVICE

I, Kevin M. Kelly, hereby certify that a true and correct copy of the Plaintiff's Memorandum in Opposition to Defendants' Daubert Motion to Preclude Plaintiff's Expert, Roger Spadt, from Offering Opinions Regarding the Cause of the Fire was served on June 11, 2021, upon counsel listed below via electronic mail:

Michael A. Salvati, Esquire
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA 19103
masalvati@mdwcg.com

de LUCA LEVINE LLC

**BY:** */s/Kevin M. Kelly*
         KEVIN M. KELLY, ESQUIRE
         ATTORNEYS FOR PLAINTIFF