IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons**<br><br>Plaintiffs(s)<br>v.<br><br>**Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company**<br><br>Defendant(s) | Civil Action No: 1:20-cv-00365-CCC<br><br>(Hon. Christopher C. Conner, C.J.) |

### PLAINTIFF'S OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANTS' TWO DAUBERT MOTIONS TO PRECLUDE PLAINTIFF'S EXPERT, MICHAEL ZAZULA, FROM OFFERING OPINIONS REGARDING CAUSATION AND DESIGN

Pursuant to this Court's Policies and Procedures, Plaintiff, Allstate Property and Casualty Insurance Company a/s/o Duane and Sherri Koons, by and through its attorneys, de Luca Levine, hereby file omnibus opposition to Defendants' two *Daubert* motions[1] to preclude Plaintiff's expert, Michael Zazula, from offering opinions regarding causation and design. Defendants' motions should be denied because Plaintiff's expert's testimony meets or exceeds the *Daubert* standard.[2]

### I.   PROCEDURAL HISTORY

This matter was originally filed in the Lebanon County Court of Common Pleas. The case was commenced on January 9, 2020 by way of a Complaint. *See Plaintiff's Exhibit A*. On March 2, 2020, Defendants' removed the matter from the Lebanon County Court of Common Pleas to the

---

[1] Defendants filed two *Daubert* motions to exclude the same expert witness in order to usurp Local Rule 7.8(b), which prohibits the filing of a brief in excess of fifteen (15) pages unless, among other things, the filing party has obtained prior authorization from the Court to exceed fifteen (15) pages or 5,000 words. Defendants did not obtain authorization to exceed fifteen (15) pages, but filed thirty (30) pages of brief in support of a single attempt to preclude Plaintiff's expert, Michael Zazula, through a *Daubert* challenge.

[2] Plaintiff hereby incorporates by reference as if fully set forth at length herein Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment, Plaintiff's Statement of Disputed Facts with Additional Material Facts Precluding Summary Judgment and the Exhibits filed by Plaintiff and Defendant.

1

United States District Court for the Middle District of Pennsylvania based on diversity jurisdiction and the amount in controversy. Thereafter, the parties made Rule 7.1 and Rule 26 disclosures, submitted a joint case management plan and exchanged written discovery. Fact witnesses were deposed[3] before the expiration of the discovery deadline. Expert witness depositions were also completed[4] after the disclosure of expert reports, including Plaintiff's experts' rebuttal reports[5].

Defendants have now filed three *Daubert* Motions related to Plaintiff's two experts, Roger Spadt and Michael Zazula, along with a Motion for Summary Judgment. For the reasons set forth herein, all three *Daubert* Motions and the Motion for Summary Judgment should be denied.

## II. COUNTER STATEMENT OF FACTS

Duane Koons is a Sergeant for the North Lebanon Township Police Department and is part of Lebanon County's accident reconstruction team. *See Plaintiff's Exhibit D at N.T. 7:9 to 8:4.* Mr. Koons' wife, Sheri Koons, is a sales associate for Home Depot. *See Plaintiff's Exhibit E at N.T. 13:6-13.* The couple married in 2008. *See Plaintiff's Exhibit E at N.T. 15:14-19.* Mr. and Mrs. Koons have resided at 1780 Ashton Drive in Lebanon since 2009, which is their primary residence. *See Plaintiff's Exhibit E at N.T. 15:4-13 & 15:23 to 16:1.* The couple has five children, ages thirty-one through thirty-six. *See Plaintiff's Exhibit E at N.T. 16:14-22.* They also own a vacation home in Virginia. *See Plaintiff's Exhibit E at N.T. 47:6 to 48:11.* In 2018, the couple would vacation in Virginia over the summer about every other weekend. *See Plaintiff's Exhibit E at N.T. 47:6 to 48:11.*

---

[3] The fact witnesses deposed were Plaintiffs, Duane and Sheri Koons, Defendants' Corporate Designee, H. Richard Bowles and Glenn Lebanon Fire Chief, Brian Vragovich.
[4] The expert witnesses deposed were Plaintiff's experts, Roger Spadt and Michael Zazula, and Defendants' experts, Eileen H. Lynn and Donald J. Hoffman.
[5] Defendants failed to attach Michael Zazula's March 5, 2021 rebuttal report to one of their two *Daubert* motions. It is now attached for the Court's easy reference. *See Plaintiff's Exhibit C.*

The couple purchased a new General Electric gas range in 2012 from Home Depot. *See Plaintiff's Exhibit D at N.T. 17:3-17 and Plaintiff's Exhibit E at N.T. 20:14-16, 21:1-4, 25:8-11, and 26:21 to 27:2.* It was installed in the couple's kitchen thereafter by Countryside Propane. *See Plaintiff's Exhibit D at N.T. 19:12-18.*

On June 6, 2018, Mrs. Koons left the couple's home in Lebanon for a four or five day extended weekend at their Virginia vacation home. *See Plaintiff's Exhibit E at N.T. 47:22 to 48:1.* Mr. Koons left the couple's Pennsylvania home on the same date. *See Plaintiff's Exhibit D at N.T. 30:7-15 & 42:23 to 43:20.* Although Mrs. Koons cleans the kitchen before each weekend trip to Virginia, there was no reason to believe that either Mr. Koons or Mrs. Koons had inadvertently turned on the gas range knobs to allow propane gas to escape, but Fire Chief, Brian Vragavich, had told Mr. Koons that at least one of the gas stove's knobs were turned on when he was one of the first people inside the home fighting the fire. *See Plaintiff's Exhibit D at N.T. 40:24 to 44:6.* The stove was last used on June 5, 2018 by Mrs. Koons. *See Plaintiff's Exhibit E at N.T. 77:22 to 78:3.*

### a. The Fire

On June 9, 2018, fire erupted in the Koons' home in Lebanon. *See Plaintiff's Exhibit E at N.T. 46:22 to 47:5.* The Koons' home was vacant at the time of the fire. *See Plaintiff's Exhibit E at N.T. 51:7-9.* There were no items on the countertop near the stove or anything directly on top of the stove that could catch fire. *See Plaintiff's Exhibit E at N.T. 54:7-20 & 55:13-18.* The Koons' neighbors, Ted and Vickie Hummel, called the fire department upon smelling smoke. *See Plaintiff's Exhibit E at N.T. 55:19 to 56:3.* Thereafter, one of Mr. Koons' partners, Sergeant Knight, delivered the bad news about the fire to Mr. and Mrs. Koons. *See Plaintiff's Exhibit E at N.T. 56:15-19 and Plaintiff's Exhibit D at N.T. 36:10 to 37:17.* Mr. and Mrs. Koons then

3

immediately made the four and a half hour drive back from Virginia to their Lebanon home. *See Plaintiff's Exhibit E at N.T. 58:1-14.* The Koons were told that the fire started in the kitchen by fire personnel, including Rusty Weitzell. *See Plaintiff's Exhibit E at N.T. 59:4 to 61:18 and Plaintiff's Exhibit D at N.T. 39:14 to 40:2 & 48:11 to 50:4.* The Koons were also told that the fire was caused by the stove knobs being turned on. *See Plaintiff's Exhibit E at N.T. 59:4 to 61:18 and Plaintiff's Exhibit D at N.T. 39:14 to 40:2 & 48:11 to 50:4.* There were no prior issues with the stove top or the oven prior to the fire. *See Plaintiff's Exhibit E at N.T. 35:13-20 and Plaintiff's Exhibit D at N.T. 23:2-12.* Mrs. Koons disliked the GE range because it burned her house. *See Plaintiff's Exhibit E at N.T. 94:4-6.* She now has a Samsung gas range. *See Plaintiff's Exhibit E at N.T. 87:22 to 88:6.*

### b.  GE's Corporate Designee Testimony

GE provides no warnings or caution that the gas stove's burner knobs can be turned on inadvertently or as an unintended consequence of a consumer's action. *See Plaintiff's Exhibit F at N.T. 118:18 to 119:24.* There is nothing in the manual or elsewhere to inform a consumer that unintended operation of the stove can occur allowing the burner to activate and allow gas to flow. *See Plaintiff's Exhibit F at N.T. 120:19 to 121:18.* GE designed the knobs in a certain way in an attempt to keep people a certain distance from the knobs, presumably to inhibit accidental manipulation. *See Plaintiff's Exhibit F at N.T. 120:19 to 121:18.* A GE gas range under the "Monogram" product line allowed for accidental manipulation and unintended gas flow, resulting in a recall by GE. *See Plaintiff's Exhibit F at N.T. 138:3-15.* The burner knobs on the model at issue in our case could be unintendedly engaged to allow gas to flow before or after the electronic spark ignitor is activated. *See Plaintiff's Exhibit F at N.T. 131:1-132:12.* Further, GE no longer produces the exact model gas range the Koons had installed in their home. *See Plaintiff's Exhibit*

*F at N.T. 138:23 to 139:9*. There was a reasonable alternative to the push and turn design of the gas range burner knobs involved in this matter, but it was not adopted or implemented by GE. *See Plaintiff's Exhibit F at N.T. 151:3-14.*

### c. Michael Zazula's Opinions

Mr. Zazula prepared two reports in this matter. First, Mr. Zazula authored a January 7, 2021 report wherein he opines that:

> Based on the results of my inspection, the information provided to date and to a reasonable degree of professional and scientific certainty, I have concluded the following:
>
> • The Koons purchased a gas-range from Home Depot;
> • The subject gas-range was manufactured and designed for/by GE;
> • On June 7, 2018, the Koons were leaving for vacation;
> • Prior to their afternoon departure, Ms. Koons reportedly cleaned the house, including the gas range;
> • The Koons estimated they left their home at approximately 3:30PM;
> • Ms. Koons did not physically check the range's burner knobs when she was finished cleaning or before they left for vacation.
> • Ms. Koons did not recall if she may have bumped the knobs while she was cleaning the range or working in the kitchen.
> • The right rear burner control was found in the ON position after the fire.
> • The left front burner control was found in the ON position after the fire.
> • The subject gas range offers no protection against inadvertent/accidental rotation of the burner controls by adults, children or pets;
> • The subject gas range offers no warning against inadvertent/accidental rotation of the burner controls by adults, children or pets;
> • GE corporate designee testified the manual provides no warnings or cautions against inadvertent/accidental rotation of the burner controls, even though such inadvertent/accidental rotation is possible;
> • LP gas emanating from the right rear and left front surface burners was ignited by a competent ignition source within the home. Possibly the refrigerator.
> • Inadvertent/accidental rotation of the burner controls by humans and pets is easily achieved;

> • A minimal amount of push force, 12-14 ounces is required to rotate the burner valve knob.
> • GE failed to utilize the Hierarchy of Controls regarding the hazard of accidental/inadvertent contact/rotation of the gas burner valve
> • GE had the ability but failed to design out the hazard of accidental/inadvertent contact/rotation of the gas burner valve.
> • GE had the ability but failed to safeguard against the hazard of accidental/inadvertent contact/rotation of the gas burner valve.
> • GE had the ability but failed to warn against the hazard of accidental/inadvertent contact/rotation of the gas burner valve.
> • It is evident, that accidental/inadvertent contact/rotation of the gas burner valve can and does occur.
> • The exemplar range experiment demonstrated gas can flow from the surface burners without the activation of the igniter.
> • The clicking of the igniter would be the only warning to the consumer of the accidental/inadvertent contact/rotation of the gas valve, but gas can flow from the range without audible clicking from the igniter
> • Inadvertent/accidental rotation of the burner controls by contact can occur when near a gas range;
> • If the subject range had protection and eliminated the hazard as stated above, this loss would not have occurred;
>
> My opinions and conclusions expressed herein have been formulated within a reasonable degree of professional and scientific certainty. They are based upon the application of reliable principles and scientific methodologies to all the facts known by IEI when the report was issued, as well as knowledge, skill, experience, training, and/or education.

*See Plaintiff's Exhibit B at 13-14.*

Second, Mr. Zazula authored a March 5, 2021 rebuttal report. *See Plaintiff's Exhibit C.* Both Plaintiff's experts and Defendants' expert, Donald J. Hoffman, agree on the area of origin of the June 9, 2018 fire:

> **Comment:** Hoffmann concludes: ***The fire originated in the kitchen in the area of the gas range.*** It appears all experts agree on this origin area.
>
> Investigators, engineers, experts, loss consultants, etc. are permitted by NFPA 921, to rely upon the information and elimination of other plausible ignition scenarios by other qualified experts. This is

6

>exactly what Mr. Spadt and I did, i.e. rely upon the information and eliminate other plausible ignition scenarios.
>
>Dr. Hoffmann states the ***cause of the fire is gas range cooktop burner being left ON, unattended, allowing the ignition of foodstuff and or combustible material inappropriately left on the cooktop.*** I have demonstrated with the photograph, above the lack of any supporting evidence which demonstrates ***foodstuff and or combustible material inappropriately left on the cooktop.*** Dr. Hoffmann's opinion is without basis in fact.
>
>Mr. Hoffmann's believes the ***cause of the fire is gas range cooktop burner being left ON, unattended……***
>For Hoffmann's theory/hypothesis/opinion to be credible and to have occurred, these ***two*** burners would have to had been deliberately and purposefully left ON causing flaming combustion of the LP gas on the range as a nefarious act by the Koon's, or accidentally left the two burners ON despite their testimony that they did not leave two of the burners ON. They ***did not hear the ticking of the spark igniters*** and ***they did not see flaming combustion of the cooktop burners*** when they left their home for vacation.
>
>\*\*\*        \*\*\*           \*\*\*   \*\*\*           \*\*\*   \*\*\*   \*\*\*
>
>Based upon my review of the aforementioned documents, my opinions and conclusions stated in my January 2021 report remain consistent and unchanged.

*See Plaintiff's Exhibit C at 8, 9 & 18.* Mr. Zazula rebuts Mr. Hoffman's cause determination without changing or modifying his original determination with regard to origin and cause. *See Plaintiff's Exhibit C.*

### III.   COUNTER STATEMENT OF QUESTIONS

1.   Whether Michael Zazula's opinions fit the case and use a reliable methodology?

     *Suggested Answer: Yes.*

2.   Whether Michael Zazula is qualified to render product design opinions, including feasible alternative designs?

     *Suggested Answer: Yes.*

7

## IV. ARGUMENT

### a. *Daubert* Standard

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. This has been interpreted to restrict expert testimony based on: (1) qualification, (2) reliability, and (3) fit. *See, e.g., Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir.2000).

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court described the district court's role under Rule 702 as gatekeepers of evidence and scientific testimony, "ensur[ing] that any and all scientific testimony or evidence is not only relevant, but reliable." *Dalton v. McCourt Electric*, 112 F. Supp. 3d 320, 324 (E.D. Pa. 2015) (citing *Daubert*, 509 U.S. 579 (1993)). An expert's opinion is reliable if it is based in sound methodology and technique, rather than subjective belief or unsupported speculation. *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir. 1994).

A "district court must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable" *Dalton*, 112 F. Supp. 3d 320, 325 (E.D. Pa. 2015) (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137 at 152 (1999)). Notably, this evaluation does not include an analysis of the expert's conclusion. Rather, the focus remains on the principles and methodology the expert employed. *Id.* at 744. If the principles and methodologies are reliable, then the conclusions should be allowed to be heard and evaluated by the fact finder. *Id.*

> [T]he evidentiary requirement of reliability is lower than the merits standard of correctness. As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process - competing expert testimony and active cross examination, rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

*USAA Cas. Ins. Co. v. Metro. Edison Co.,* No. 1:12-CV-1178, 2014 WL 3943706, at *4 (M.D. Pa. Aug. 12, 2014) (citing *United States v. Mitchell*, 365 F. 3d at 244 (3d Cir. 2004)). Regarding this preference, "the Third Circuit has emphasized that not only do the Rules of Evidence generally 'embody a strong preference for admitting any evidence that may assist the trier of fact,' but Rule 702 specifically 'has a liberal policy of admissibility." *Dalton*, 112 F. Supp. 3d 320, 325 (2015) (citing *Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir.2008)).

Previous courts have held that following the scientific method is reliable for purposes of Rule 702. *See e.g. State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 442 (E.D. Pa. 2013); *Community Ass'n Underwriters of Am., Inc. v. Rhodes Development Grp.,* 2013 WL 818596, at *11 (M.D. Pa. Mar. 5, 2013); *Hoang v. Funai Corp.,* 652 F.Supp.2d 564, 567, 570 (M.D. Pa. 2009).

### b. Michael Zazula's opinions fit the case and use a reliable methodology.

Defendant argues that Plaintiff's expert, Michael Zazula, should have his testimony excluded because his opinions do not "fit" the case because they allegedly lack factual evidence and because he employs a results-oriented unreliable methodology.

Plaintiff retained Michael Zazula to conduct an investigation as to the cause of the failure, the cause of the incident and whether a defect existed in any product involved in the case. *See Plaintiff's Exhibits B, C and I.* Mr. Zazula has extensive experience and education in the fields in which he offers opinions and has testified in many Federal and State matters, including matters

9

involving gas ranges and burner knob failure.  *See Plaintiff's Exhibits G, H & I at N.T. 59:7 to 63:10 & 66:14 to 74:3.*

The qualifications of Mr. Zazula are sound.  *See Plaintiff's Exhibit G & I at N.T. 37:5 to 49:13 & 54:19-24*.  Mr. Zazula's reliability, including his methodology and technique avoid subjective belief and unsupported speculation.  *See Plaintiff's Exhibits B, C & I at N.T. 74:4 to 106:6*; *See also In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir. 1994).

Mr. Zazula began his investigation on June 9, 2018 and then conducted several joint investigations with all parties.  *See Plaintiff's Exhibits B at 1.*  Mr. Zazula was at the actual site, performed lab exams and tests, reviewed discovery from Defendant, reviewed fact witness testimony, reviewed Mr. Spadt's findings and report, reviewed all Defendants' expert witness reports, provided deposition testimony, and reviewed standards, code and best practices, among other things.  *See Plaintiff's Exhibit B at 1-3*; *See Plaintiff's Exhibits I at N.T. 74:4 to 106:6*

Mr. Zazula also detailed his methodology.  *See Plaintiff's Exhibit B at 3-4 & Exhibit I at N.T. 74:4 to 106:6.*  Mr. Zazula employed the National Fire Protection Association ("NFPA") 921, Chapter 4 scientific methodology.  *See Plaintiff's Exhibits B, C & I at N.T. 74:12 to 75:15; Plaintiff's Exhibit B at 3-4; See Plaintiff's Exhibit J.*

Mr. Zazula also gathered data, made observations and conducted tests.  *See Plaintiff's Exhibit B at 3-5.*  He even obtained an exemplar gas range and performed multiple tests using the exemplar.  *See Plaintiff's Exhibit B at 7-8; See Plaintiff's Exhibits I at N.T. 127:17 to 143:3 (gas flow) and 143:4 to 155:15 (knobs).*  The tests established gas flow without spark ignition both pre and post "Lite" position on the gas range.  *See Plaintiff's Exhibit B at 7; Plaintiff's Exhibit I at N.T. 127:17 to 155:15.*  The tests also revealed that minimal force would activate and rotate the gas burner valves – 12 to 14 ounces of push force.  *See Plaintiff's Exhibit B at 7-8; Plaintiff's*

10

*Exhibit I at N.T. 127:17 to 155:15.* Any bumping or rubbing against the knob would allow for inadvertent rotation of the burner valve allowing gas to flow uncontrolled. *See Plaintiff's Exhibit B at 7-8; Plaintiff's Exhibit I at N.T. 127:17 to 155:15.*

The *Daubert* "fitness" requirement indicates that an expert's opinion must fit the facts of the case so that they could reliably flow from the facts known to the expert and methodology used. *Oddi v. Ford Motor Co.*, 234 F. 3d. 136, 146 (3rd Cir. 2000). Here, Mr. Zazula considered the testimony of Ms. Koons in the kitchen cleaning the area of the stove before leaving for vacation to determine that the knobs were inadvertently rotated causing gas to flow from the burner valve uncontrolled. *See Plaintiff's Exhibit B at 2-3; Plaintiff's Exhibit I at N.T. 180:19 to 196:12.* Further relevant factual data was considered:

> • Prior to their afternoon departure, Ms. Koons reportedly cleaned the house, including the gas range;
> • The Koons estimated they left their home at approximately 3:30PM;
> • Ms. Koons did not physically check the range's burner knobs when she was finished cleaning or before they left for vacation.
> • Ms. Koons did not recall if she may have bumped the knobs while she was cleaning the range or working in the kitchen.

*See Plaintiff's Exhibit B at 13.* He then tested an exemplar range to determine if gas could flow without spark ignition both pre and post "Lite" position on the gas range. *See Plaintiff's Exhibit B at 7.* This was confirmed that it fact it could. He then found that minimal force would activate and rotate the gas burner valves – 12 to 14 ounces of push force - and any bumping or rubbing against the knob by Mrs. Koons would allow for inadvertent rotation of the burner valve allowing gas to flow uncontrolled. *See Plaintiff's Exhibit B at 7-8.* The gas was then ignited by the nearby refrigerator, as it pooled onto the floor. *See Plaintiff's Exhibit B at 13-15.*

11

The principles and methodologies of Mr. Zazula are reliable. The scientific method was employed by Mr. Zazula, as demonstrated in his report and testimony, and such is not a results oriented approach. *Plaintiff's Exhibit I at N.T.74:12 to 75:15, 77:17-22 & 78:7-19*. So it follows then that his conclusions using a gold standard methodology should be permitted to be heard and evaluated by the fact finder. Likewise, as demonstrated above, Mr. Zazula's opinions "fit" the case because they are supported by factual evidence and because he employs the scientific methodology.

### c. Michael Zazula is qualified to render product design opinions, including feasible alternative designs

Mr. Zazula is qualified to render product design opinions, including feasible alternative designs. *Kenney v. Watts Regulator Co., 2021 WL 84065 (E.D. Pa. 2021)(Mr. Zazula was qualified to provide design opinions after Daubert challenge); Plaintiff's Exhibit I at N.T. 49:14 to 50:10, 51:13 to 54:9 & 200:19 to 238:5.* Plaintiff has demonstrated design defects through Mr. Zazula and can therefore substantiate allegations of product defect. *See Plaintiff's Exhibits B, C & I at N.T. 114:8-114:21.*

One way to demonstrate a defect is by the submission of circumstantial evidence. *Greco v. Bucciconi Engineering Co.,* 407 F.2d 87, 89–90 (3d Cir. 1969). Under Pennsylvania law a product may be found defective if it "functioned improperly in the absence of abnormal use and reasonable secondary causes." *Greco,* 407 F.2d at 89–90. Besides the specific expert testimony set forth herein, the GE gas range "functioned improperly" when it failed to prevent the uncontrolled flow of propane gas from inadvertent rotation of the gas burner valves and no evidence exists of a secondary cause for the gas range's failure exists.

Mr. Zazula has an extensive testimony list and prior history relating to expert opinions he espoused on gas ranges, gas range failures and inadvertent rotation of gas burner valves/knobs

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

causing resulting incidents. *Plaintiff's Exhibit H and I at N.T. 43:8 to 45:6, 37:5 to 49:13, 54:19-24, 59:7 to 63:10 and 66:14 to 74:3*. To be sure, he has the requisite design qualifications (*Exhibit I at N.T. 49:14 to 50:10 and 51:13 to 54:9*), has previously been qualified to offer design opinions in the 3rd Circuit (*Kenney, 2021 WL 84065)*, has extensive and relevant prior testimony on the same subject matter (*Exhibit H & I at N.T. 59:7 to 63:10 & 66:14 to 74:3*), employed the gold standard scientific method pursuant to Chapter 4 of the NFPA (*Exhibit I at N.T. 74:12 to 75:15, 77:17-22 and 78:7-19; Exhibit J*) and formulated his opinions after an exhaustive investigation, testing and review of materials (*Exhibits B, C & I*).

Roger Spadt, Plaintiff's fire origin and cause expert, and Mr. Zazula, investigated the matter together from June of 2018 to the present, including a June 22, 2018 scene investigation and a July 10, 2018 joint scene investigation with testing and evidence retention. *See Defendants' Exhibit K at N.T. 12:21 to 15:22; 160:10 to 164:7; 164:17 to 166:22; 184:8 to 185:24*. They also exchanged information thereafter. *See Defendants' Exhibit K at N.T. 187:1-6*; *See also Plaintiff's Exhibits B, C & I*.

Despite assertions to the contrary, nowhere in Mr. Zazula's testimony or two reports did he state he used a results oriented methodology or imply that such method was ever used. *See Plaintiffs' Exhibits B, C and I at N.T. 74:12 to 78:19*. No expert who has employed the scientific method has ever been excluded from testifying. Mr. Zazula employed the scientific method in his investigation and report pursuant to the NFPA. *See Plaintiffs' Exhibits B, C and I at N.T. 74:4 to 106:6*. Mr. Zazula revealed his methodology and use of the NFPA 921 at his deposition, which Defendants' have only parsed out selective self-serving passages, but a full reading of his testimony reveals strong adherence to the scientific method and NFPA 921 guidelines. *See Plaintiffs' Exhibits B, C and I at N.T. 74:4 to 106:6*.

Most notably, in preparation of his report, Mr. Zazula obtained an exact model exemplar of the GE gas range and conducted gas flow and burner valve tests. *See Plaintiffs' Exhibits B, C and I at N.T. 127:17 to 155:15*. Mr. Zazula also made calculations regarding the gas LEL and UEL within the home, along with various other liquid propane determinations. *See Plaintiffs' Exhibits B, C and I at N.T. 35:12-19, 106:6 to 110:5, 118:14 to 127:10, 172:7 to 177:18, 259:1 to 274:5, 284:9 to 288:12 & 307:1 to 308:2*. Mr. Spadt's investigation was thorough and clearly employed the scientific method pursuant to the NFPA 921 guidelines. *See Plaintiffs' Exhibit J*.

While the defense is focused on the red herring refrigerator, which merely ignited the fugitive gas released by the defective General Electric gas stovetop range, which has been thoroughly addressed by Mr. Zazula (*Exhibit B, C and I at N.T. 241:14 to 258:24*), Mr. Zazula was focused on identifying the cause of the fire, i.e. the gas range that released fugitive gas uncontrolled due to the accidental rotation of the gas burner valves. *See Plaintiffs' Exhibits B, C and I at N.T. 114:8-21*. It is not that the refrigerator malfunctioned in anyway, but rather that the GE range failed to prevent the release of uncontrolled gas into a home for two days until that fugitive propane gas was ignited. Defendants fail to see the forest for the trees, but instead focus on minute details that make little to no difference. What would it matter if a toaster or cellphone ignited the fugitive gas? It would not change the origin or cause of the fire, which will always remain as originating in "the area around the General Electric Company Model JGBP87SEM1SS propane range located along the west wall, to also include the west wall and its related interior space…" and that the "fire was caused by the General Electric Company Model JGBP87SEM1SS propane range's right rear and left front burner control knobs not being in the "Off" position, which allowed the propane gas to flow from the burners' valves, thus becoming fugitive gas within the area of origin." *See Plaintiff's Exhibit B, C, I and K*.

Mr. Zazula painstakingly detailed his alternate design opinions that the subject GE gas range could have been designed much safer. First, Mr. Zazula described the gas lockout controls that were available. *See Plaintiffs' Exhibits B, C and I at N.T. 200:19 to 208:2*. Second, he described the gas knob safety covers that could have accompanied the gas range. *See Plaintiffs' Exhibits B, C and I at N.T. 208:3 to 213:9*. He specifically described the Range Safe knobs that were available for use by GE. *See Plaintiffs' Exhibits B, C and I at N.T. 213:10 to 223:9 and 224:4 to 227:5*. Those knobs would have required a pinch, push and turn, an extra step from what the GE range knobs required that were installed on the subject rage. Fourth, Mr. Zazula set forth better design that existed with Whirlpool and Electrolux gas ranges, angled knob design by GE in their Monogram line and the poor shape of the subject GE range. *See Plaintiffs' Exhibits B, C and I at N.T. 223:10 to 24:2, 227:6 to 238:5, and 296:1 to 296:23*.

## V.     CONCLUSION

Based on the reasons set forth above, Plaintiff respectfully submits that an Order denying Defendants' two Daubert Motions to Preclude Plaintiff's Expert, Michael Zazula, from Offering Opinions Regarding Causation and Design should be entered on the docket.

                **de LUCA LEVINE LLC**

BY: */s/Kevin M. Kelly*
      **KEVIN M. KELLY**
      PA ID: 87413
      Three Valley Square, Suite 220
      Blue Bell, PA 19422
      215-383-0081
      215-383-0082 (fax)
      kkelly@delucalevine.com
      **ATTORNEYS FOR PLAINTIFF**

**Dated:**  June 11, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons**<br><br>Plaintiffs(s)<br>v.<br><br>**Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company**<br><br>Defendant(s) | Civil Action No: 1:20-cv-00365-CCC<br><br>(Hon. Christopher C. Conner, C.J.) |

**CERTIFICATE OF SERVICE**

I, Kevin M. Kelly, hereby certify that a true and correct copy of the Plaintiff's Memorandum in Opposition to Defendants' two *Daubert* Motions to Preclude Plaintiff's Expert, Michael Zazula, from Offering Opinions Regarding Causation and Design was served on June 11, 2021, upon counsel listed below via electronic mail:

Michael A. Salvati, Esquire
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA 19103
masalvati@mdwcg.com

**de LUCA LEVINE LLC**

**BY:** /s/Kevin M. Kelly
KEVIN M. KELLY, ESQUIRE
ATTORNEYS FOR PLAINTIFF