IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons<br><br>**Plaintiff**<br>v.<br><br>Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company<br><br>**Defendants** | Civil Action No: 1:20-cv-00365-CCC<br><br>(Hon. Christopher C. Conner)<br><br>JURY TRIAL DEMANDED |

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' DAUBERT MOTION
TO PRECLUDE PLAINTIFF'S EXPERT, MICHAEL ZAZULA,
FROM OFFERING OPINIONS REGARDING CAUSATION**

**TABLE OF CONTENTS**

Page

1. The filing of separate Daubert motions was appropriate…………………………. 1

2. Defendants did not cite to Mr. Zazula's rebuttal report in this Motion because it was not relevant to the arguments raised…………………. 1

3. Plaintiff's arguments do not salvage Mr. Zazula's inadequate methodology, and in fact weaken his methodology further………………………. 2

    a. Plaintiff's references to the scientific method and to NFPA 921 do not satisfy the Daubert standard where Mr. Zazula did not faithfully apply those methods……………………….. 2

    b. The "calculations" and "testing" identified by Plaintiff are insufficient……………………………………………………………….. 4

    c. Plaintiff's disavowal of the refrigerator as an ignition source fatally undermines Mr. Zazula's methodology……………………. 6

4. Plaintiff fails to demonstrate that Mr. Zazula's causation opinions "fit" this case…………………………………………………………….. 8

Pursuant to Local Rule 7.7, Defendants hereby submit this Reply Brief in support of their Motion to Preclude Michael Zazula from offering opinions regarding the cause of the subject fire.

1. *The filing of separate Daubert motions was appropriate.*

In its opposition brief, Plaintiff criticizes Defendants for filing two briefs challenging the opinions of Michael Zazula, and speculates that Defendants did so to circumvent this Court's local rules regarding page length. In a contemporaneous Reply Brief, Defendants address this issue in more detail. In short, though, Defendants filed two briefs because each supports a separate, independent motion. Defendants' Daubert motions each rely on different facts; each addresses a different discipline; each relies on different case law and makes different arguments regarding different parts of the Daubert trilogy; and each seeks distinct relief, challenging separate and specific opinions proffered by Mr. Zazula. In a nutshell, one motion addresses the investigation and cause of various types of fires, while the other addresses issues of consumer appliance design. Defendants divided these arguments into two motions not to circumvent the page limit (as Plaintiff speculates), but to present technical and complex issues to the Court in an organized and coherent way.

2. *Defendants did not cite to Mr. Zazula's rebuttal report in this Motion because it was not relevant to the arguments raised.*

Plaintiff also criticizes Defendants for providing the Court with only one copy of Mr. Zazula's rebuttal report. See ECF Doc. No. 35-1 at 2 n. 5. Defendants did not refer to Mr. Zazula's rebuttal report while challenging his causation opinions, because the report was not relevant to those arguments. As Mr. Zazula himself acknowledged at his deposition, his rebuttal report was simply a response to the opinions of defense expert Donald Hoffmann, and did not incorporate any additional testing not covered in his original report. See Zazula dep. (Ex. F to

1

Defendants' original motion) at 274:16-275:13.  Indeed, the only specific portion of Zazula's second report that Plaintiff cites in its Opposition is on p. 6-7, where Plaintiff notes "Mr. Zazula rebuts Mr. [sic] Hoffmann's cause determination ***without changing or modifying his original determination with regard to origin and cause***."  See ECF Doc. No. 35-1 at 7 (emphasis added).  Defendants did not cite to Mr. Zazula's second report in its causation motion because Mr. Zazula's second report adds nothing to his methodology, which was at issue in that motion.

However, as Plaintiff tacitly acknowledges, Defendants did provide a copy of Mr. Zazula's rebuttal report with its motion challenging his design opinions because it was relevant to that motion: Mr. Zazula had identified another alternative product design.  See ECF Doc. No. 25 at 3, 7, 11 and Ex. "F" attached thereto.  Mr. Zazula's rebuttal report was also attached to Defendants' Motion for Summary Judgment.  See ECF Doc. No. 32 and Ex. "F" attached thereto.  Combined with the copy attached as Exhibit "C" to Plaintiff's Opposition, the Court now has three copies of Mr. Zazula's rebuttal report.  Defendants submit that the Court was not prejudiced by the omission of that report from the instant motion.

3. *Plaintiff's arguments do not salvage Mr. Zazula's inadequate methodology, and in fact weaken his methodology further.*

    a. Plaintiff's references to the scientific method and to NFPA 921 do not satisfy the Daubert standard where Mr. Zazula did not faithfully apply those methods.

Several times in its Opposition, Plaintiff argues that Mr. Zazula's method was satisfactory because he adhered to "the scientific method" and NFPA 921 regarding fire investigations.  See, e.g., Exhibit 35-1 at 9 ("the scientific method is reliable for purposes of Rule 702"); 13 ("No expert who has employed the scientific method has ever been precluded from testifying.  Mr. Zazula employed the scientific method in his investigation and report pursuant to the NFPA.").  But, as Defendants pointed out in their original Motion, it is not enough for an

2

expert to invoke NFPA 921 and evade Daubert scrutiny. If an expert cites to NFPA 921, but fails to faithfully apply its provisions, that expert's methodology is unreliable. See State Farm v. Steffen, 948 F. Supp. 2d 434, 446 (E.D. Pa. 2013). Similarly, "something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." Soldo v. Sandoz Pharmaceuticals Corp., 244 F. Supp. 2d 434, 560 (W.D. Pa. 2003) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc. ("Daubert II"), 43 F.3d 1311, 1315-16 (9th Cir. 1995)). In Soldo, for example, the plaintiff's experts were found to have an unreliable methodology when they did not faithfully apply their own standard, i.e. they failed to conduct the testing they acknowledged was necessary. See id. at 560-61.

The same result should hold in this case. Though Plaintiff and Mr. Zazula make reference to NFPA 921 and the scientific method, Mr. Zazula did not faithfully adhere to those methodologies. As detailed in Defendants' original motion, Mr. Zazula failed to test his hypothesis regarding gas accumulation in the Koonses' home, a necessary step in the scientific method. See ECF Doc. No. 27 at 10-14; see also Soldo, 244 F. Supp. 2d at 560 (scientific method includes, inter alia, "testing the hypothesis."). Similarly, Mr. Zazula deviated from NFPA 921 by concluding that the refrigerator was the ignition source of the fire without inspecting it or otherwise making any affirmative observations regarding its role in the fire. See ECF Doc. No. 27 at 14-15; see also NFPA 921 § 19.6.5 (rejecting "negative corpus" methodology as "not consistent with the scientific method."). Further, as with the precluded experts in Soldo, Mr. Zazula failed to conduct the testing he acknowledged was necessary, as he did not test, measure, or take into account air movement, gas stratification, temperature, air

3

pressure, or other variables he acknowledged governed how and where gas would accumulate. See ECF Doc. No. 27 at 11-13.

Again, it is not enough for Plaintiff simply to make reference to the scientific method or to NFPA 921. While those may be reliable methodologies, Mr. Zazula did not faithfully follow them here.

  b. The "calculations" and "testing" identified by Plaintiff are insufficient.

Plaintiff's method does identify certain calculations and testing performed by Mr. Zazula, but those activities are misleadingly described and inadequate to reach the conclusions Mr. Zazula offers.

For example, Plaintiff argues that "Mr. Zazula also made calculations regarding the gas LEL and UEL within the home, along with various other liquid propane determinations." See Plaintiffs' Opposition, ECF Doc. No. 35-1, at 14. As explained in Defendants' original motion, "LEL" and "UEL" are the lower and upper explosive limits, respectively, and reflect the concentration of LP gas that must be present in the air for it to ignite. See ECF Doc. No. 27 at 3-4. Mr. Zazula **did not** offer calculations regarding the LEL and UEL in the home. What he offered was the numerical value of the LEL and UEL for LP gas. See Zazula dep. (attached as Ex. "F" to Defendants' motion) at 259:1-260:6. Mr. Zazula admitted he did not measure or calculate the level of gas in the Koonses' home, i.e. whether it was between the LEL and UEL, as necessary to ignite a fire. See id. at 261:13-17. That is akin to stating that water boils at 212 degrees Fahrenheit (the numerical value), and then concluding that a faucet emitted scalding water without actually measuring the temperature of the water. Simply put, it is not enough for

4

Mr. Zazula to state how much gas accumulation is needed for a fire to ignite, and then do nothing to determine how much gas was actually present at the time of the fire. [1]

Plaintiff also trumpets as "most notable" Mr. Zazula's testing on an exemplar range. See Plaintiff's Opposition, ECF Doc. No. 35-1, at 14. Defendants already addressed this argument in their original motion. See ECF Doc. No. 27 at 13. As expected, Plaintiff argues that Mr. Zazula conducted testing on an exemplar range to demonstrate that, at certain positions of the burner control knobs, the burners can emit gas without the igniter being active. Defendants dispute the import of this finding, but it still does not answer the critical questions raised by their motion. Even accepting Zazula's results that gas <u>can</u> be emitted from the burners, that does not address (1) whether that <u>did</u> happen in this case, (2) whether gas accumulated in a sufficient concentration to be ignited into a fire, but not an explosion, and (3) whether the supposedly accumulating gas was ultimately ignited by the refrigerator. In other words, ***did the condition identified by Plaintiff cause this fire?***

These are critical questions, given that there is no factual evidence that the burner control knobs were accidentally activated, or that the burners were emitting gas. (Indeed, the central witnesses, the homeowners, disputed that that happened!) Mr. Zazula's exemplar testing is insufficient because it does nothing to demonstrate that the alleged condition manifested itself in this case and caused this fire. In this regard, Mr. Zazula's methodology falls woefully short. See, e.g., Maldonado v. Walmart Store No. 2141, 2011 WL 1790840, *10-11 (E.D. Pa. May 10,

---

[1] In fairness to Mr. Zazula, later in his deposition, he made reference to calculations he supposedly performed regarding the area around the base of the refrigerator, calculations he did not record anywhere and did not include in his reports. See Zazula dep. (Ex. "F" to Defendants' motion) at 264:20-266:4. Of course, to the extent Plaintiff's Brief now says the refrigerator is a "red herring," and does not matter as the ignition source, Mr. Zazula's "calculations" about the area near the refrigerator would likewise be irrelevant. Moreover, the point Defendants made in the main text stands: notwithstanding those unrecorded calculations, Zazula did not determine, and could not say, how much gas had accumulated in the Koonses' kitchen. See Zazula dep. (Ex. F.) at 261:13-17.

5

2011) (separately considering expert's methodology, or lack thereof, with respect to defect <u>and</u> causation opinions).

  c.  Plaintiff's disavowal of the refrigerator as an ignition source fatally undermines Mr. Zazula's methodology.

In their original Motion, Defendants noted that Plaintiff's experts' identification of the refrigerator as the ignition source of the fire was unscientific, and an express deviation from NFPA 921, inasmuch as they did not actually inspect the refrigerator, and made no affirmative observations regarding its role in the fire. <u>See</u> ECF Doc. No. 27 at 14-15. In response, Plaintiff disavows the refrigerator as an unimportant "red herring." <u>See</u> Plaintiff's Opposition, ECF Doc. No. 35-1, at 14. Plaintiff suggests that the fire could have been ignited by a toaster, or a cell phone, or by anything else. <u>See id.</u>[2]

Plaintiff's disavowal of its experts' determination of the ignition source dooms Mr. Zazula's methodology, in two ways. First, as noted above, Plaintiff insists that Mr. Zazula's methodology is reliable because it complies with NFPA 921. But NFPA 921 outlines the process of determining a fire's cause as follows:

> Fire cause determination is the process of identifying (1) the first fuel ignited, (2) **the ignition source**, (3) the oxidizing agent, and (4) the circumstances that resulted in the fire.

<u>State Farm Fire & Cas. Co. v. Steffen</u>, 948 F. Supp. 2d 434, 442 (E.D. Pa. 2013) (emphasis added) (quoting NFPA 921 § 18.1). Identifying the ignition source of the fire is thus an important component of determining a fire's cause under NFPA 921. <u>See id.</u> at 442-43 (without a reliable ignition source, expert's "proffered ignition sequence is rooted in supposition"); <u>see also</u> <u>Kozar v. Sharp Electronics Corp.</u>, 2005 WL 2456227 (W.D. Pa. Sept. 30, 2005) (excluding

---

[2] This is an odd position, as, earlier in its Opposition, Plaintiff had touted the methodology of Mr. Zazula as including a determination that the alleged fugitive gas was ignited by the refrigerator. <u>See</u> ECF Doc. No. 35-1 at 11.

6

experts who could not reliably identify an ignition source, because "NFPA 921 states that in determining the cause of the fire, the investigator must identify, inter alia… the presence of a competent ignition source."); Nationwide Mut. Ins. Co. v. National RV Holdings, Inc., 2007 WL 954258, *5 and n.5 (M.D. Pa. Mar. 28, 2007) (Sections 4 and 18 of NFPA 921 require that the ignition source of a fire be identified as part of determining the fire's cause).  If the refrigerator is an unimportant "red herring" that cannot be relied upon as an ignition source for the fire, then Mr. Zazula has not satisfied NFPA 921 with respect to the determination of the fire's cause.

Plaintiff's disavowal of the refrigerator as an ignition source dooms its experts' methodology for another reason: it undermines the process of elimination used to identify the cause of the fire.  Mr. Zazula's report indicates that he relied on fire investigator Roger Spadt to eliminate other plausible ignition scenarios and determine the cause of the fire as "fugitive gas emitted by the range and subsequently ignited by the refrigerator."  See Zazula report (attached as Exhibit "A" to Defendants' original motion) at 2.  And in defending Mr. Spadt's methodology in a contemporaneous opposition brief, Plaintiff highlights Mr. Spadt's process of elimination, and touts that he considered and rejected 11 other hypotheses.  See ECF Doc. No. 33-1 at 14.[3]

Plaintiff's Opposition asks why the refrigerator matters.  ECF Doc. No. 35-1 at 14.  It matters because it is a key step in how Plaintiff's experts purport to identify the cause of this fire.  If, as Plaintiff suggests, the fire could have been ignited by a cell phone, or a toaster, or who knows what else, then Plaintiff's experts have not properly ruled out all other possible causes of this fire.  See, e.g., Kozar, 2005 WL 2456227 at *3-4 (fire cause and origin expert precluded

---

[3] Notably, **one of the disproved hypotheses was the range itself!** In his report, Mr. Spadt rules out the range as an ignition source of the fire.  See Spadt report (attached as Exhibit "B" to Defendants' original motion) at 11.  In the absence of the refrigerator as an ignition source, Plaintiff does not have a theory as to how this fire started.

7

because he "was able to eliminate many possible ignition sources, but he was not able to eliminate them all").

Plaintiff's core problem is that its theory of the fire is based on speculation rather than evidence. Mr. Zazula contends that the GE range can emit gas under certain conditions, and notes that a fire occurred, and leaps to the conclusion that former caused the latter, without doing the work necessary to make the connection. Plaintiff's retreat from the refrigerator is yet another gap in its analysis: it cannot establish that the range's burner control knobs were accidentally activated by Mrs. Koons, it cannot say how much gas had accumulated in the home or where (if indeed gas was accumulating at all), and now it is no longer confident in the ignition source of the fire. Without these elements, Plaintiff and its experts simply cannot satisfy the NFPA's methodology for determining the cause of this fire. See Steffen, supra; Kozar, supra.

4.  *Plaintiff fails to demonstrate that Mr. Zazula's causation opinions "fit" this case.*

In its original Motion, Defendants argued that Mr. Zazula's opinion, that the fire was caused by inadvertent activation of the burner control knobs, did not "fit" this case, as there was no evidence that Mr. or Mrs. Koons had done so. (In fact, they disputed having done so.) See ECF Doc. No. 27 at 1-2, 6-8. In the absence of evidence that the Koonses had accidentally turned on their range, Mr. Zazula cited to an episode of the HBO series The Sopranos, his fiancée's own anecdotal experience with a different manufacturer's range, and YouTube videos of dogs jumping onto ranges to argue that "clearly this is something that occurs." See id. at 2, 7-8.

In its opposition brief, Plaintiff does not rely on The Sopranos or on any YouTube videos. But neither does Plaintiff identify any evidence that the Koonses accidentally activated their range. See ECF Doc. No. 35-1 at 11. Plaintiff contends that Mr. Zazula considered the

8

"relevant factual data," which includes the facts that Mrs. Koons reportedly cleaned the range before leaving, that she did not look to see whether she had accidentally turned the burner knobs on, and that she did not recall whether she had accidentally turned them on. See id. To that, Defendants would add that Mr. and Mrs. Koons both testified that they had never accidentally activated the range before in the many years they had owned it and they had no reason to believe they had done so on this occasion. In fact, Mr. Koons told the investigating first responders that it was "impossible" that such a thing had happened. See ECF Doc. No. 27 at 1-2, 7.[4]

Though not expressly referenced in the argument section, Plaintiff notes in the fact section of its Opposition that "The Koons were also told that the fire was caused by the stove knobs being turned on." See ECF Doc. No. 35-1 at 4. The deposition transcripts cited by Plaintiff do not stand for this proposition. Plaintiff's Exhibit "D," Mr. Koons' deposition transcript, indicates at the cited pages that Mr. Koons was told that the fire started in the kitchen (Mr. Koons dep. at 39:14-40:2), and that Plaintiff's expert Roger Spadt had noted that one of the burner knobs had been slightly turned, but that neither of them (Koons or Spadt) had an explanation for that. (Mr. Koons dep. at 48:11-50:4). To the contrary, Mr. Koons testified that no one had ever told him what caused the fire. See Mr. Koons dep. at 48:11-49:12 ("And to this day, I don't recall anybody saying this is what happened.").[5]

Similarly, Mrs. Koons' deposition transcript does not establish the factual cause of the fire. The portions of the transcript cited by Plaintiff indicate that Mrs. Koons talked to Rusty

---

[4] Indeed, as Plaintiff notes in its recitation of the facts, Mr. and Mrs. Koons traveled to Virginia every other weekend, and Mrs. Koons cleaned the range before each such trip. See ECF Doc. N. 34-1 at 2-3. The mere fact that Mrs. Koons cleaned the range on a certain date cannot be sufficient to establish that she turned the knobs on accidentally, when she had similarly cleaned the range dozens of times, perhaps more, since its purchase in 2012, and never experienced this supposed problem.

[5] Mr. Koons also noted that it was his understanding that the burner control knob identified by Roger Spadt may have been turned by one of the firefighters during the efforts to extinguish the fire. See Mr. Koons dep (Ex. D to Defendants' original motion) at 41:23-42:22; 50:5-12.

9

Weitzel, the fire chief, but he did not know what caused the fire. See Mrs. Koons' dep (Ex. "E" to Defendants' original motion) at 59:4-60:12. Mrs. Koons further indicated that "the engineer" told her that the range's knobs were able to be turned on without being pushed in. See id. at 60:24-61:18. Though Plaintiff has not retained an engineer in this case, Defendants suspect Mrs. Koons was referring to Michael Zazula, as the name Michael was familiar to her, and Mr. Zazula holds himself out as an "engineering consultant" (despite not having an engineering degree, license, or other credential). See id. at 64:23-66:5 (one of the two gentlemen who inspected her property was named Michael); see also Zazula dep (Ex. "F" to Defendants' original motion) at 40:8-41:16 (setting forth his lack of engineering credentials). Assuming "the engineer" is Mr. Zazula, he no longer holds the opinion that the burner control knobs were able to be turned on without being pushed in. See Zazula report (Ex. "A") at 8; Zazula dep. (Ex. "F") at 146:8-147:22; 148:14-22..[6]

      Again, the issue is whether Mr. Zazula's opinions "fit" this case – in other words, do they reliably flow from the facts known to the expert. Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000). Zazula's opinions regarding the accidental activation of the burner knobs find no foundation in the testimony or Mr. or Mrs. Koons. Perhaps the only "fact" Plaintiff can muster is that Mr. Zazula told Mrs. Koons that the range caused the fire, but that cannot be enough – particularly when he is no longer advancing the same theory of defect. It is simply circular to say that Mr. Zazula's causation opinion flows from the facts when the supposed "fact" from which it flows is that Mr. Zazula expressed that opinion. See, e.g., State Farm Fire and Cas. Co. v. Holmes Products, 165 Fed. App'x 182, 185, 186 (3d Cir. 2006) (affirming preclusion of expert

---

[6] And if "the engineer" is not Mr. Zazula, Plaintiff cannot create an issue of fact via an offhand reference to the opinion of an unnamed consultant who did not produce a report in this case.

10

whose unsupported speculation that a fire started when a dog knocked over a lamp did not "fit" the facts of the case).

For these reasons, and the reasons expressed in Defendants' original brief, Michael Zazula should be precluded from offering opinions regarding the cause of the fire.

        **MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By:   */s/ Michael A. Salvati*
      MICHAEL A. SALVATI
      Attorney ID. No. 311682
      Attorney for Defendants
      2000 Market Street, Suite 2300
      Philadelphia, PA 19103
      215-575-4552 (P) / 215-575-0856 (F)
      masalvati@mdwcg.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons<br><br>Plaintiff<br>v.<br><br>Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company<br><br>Defendants | Civil Action No: 1:20-cv-00365-CCC<br><br>(Hon. Christopher C. Conner, J.)<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Reply Brief in Support of Defendants' *Daubert* Motion to Preclude Plaintiff's Expert, Michael Zazula, from Offering Opinions Regarding Causation was served this date, via the court's electronic filing system, to the following person:

Kevin M. Kelly
de LUCA LEVINE LLC
Three Valley Square, Suite 220
Blue Bell, PA 19422

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: */s/ Michael A. Salvati*
MICHAEL A. SALVATI
Attorney for Defendants

**DATED:** June 24, 2021