IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons**<br><br>**Plaintiff**<br>v.<br><br>**Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company**<br><br>**Defendants** | Civil Action No:  1:20-cv-00365-CCC<br><br>(Hon. Christopher C. Conner)<br><br>JURY TRIAL DEMANDED |

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' DAUBERT MOTION
TO PRECLUDE PLAINTIFF'S EXPERT, MICHAEL ZAZULA,
<u>FROM OFFERING OPINIONS REGARDING DESIGN</u>**

**TABLE OF CONTENTS**

<u>Page</u>

1. The filing of separate Daubert motions was appropriate…………………………  1

2. Plaintiff's arguments do not overcome Mr. Zazula's lack
   of qualifications to offer design opinions……………………………………….. 3

3. Plaintiff fails to address the deficiencies in Mr. Zazula's
   opinions regarding alternative designs………………………………………… 6

i

Pursuant to Local Rule 7.7, Defendants hereby submit this Reply Brief in support of their Motion to Preclude Michael Zazula from offering opinions regarding product design.

*1.     The filing of separate Daubert motions was appropriate.*

In its opposition brief, Plaintiff notes that Defendants filed two Daubert motions challenging the opinions of Michael Zazula, and speculates that Defendants did so to circumvent this Court's local rules regarding page length.  Plaintiff's speculation as to Defendants' motive is mistaken.  Defendants filed two separate motions, with accompanying briefs, each of which is within this Court's fifteen-page limit.

Indeed, they are separate motions.  Defendants did not submit two motions each asking for the preclusion of Mr. Zazula's testimony in toto.  Instead, the motions seek distinct relief.  Each addresses certain specific opinions proffered by Mr. Zazula (fire causation vs. product design); each relies on different facts (the principles of gas accumulation and how different fires start vs. the design features of the subject range and Mr. Zazula's suggested alternatives); each addresses a different discipline (fire science vs. product design/engineering); each relies on different case law and makes different arguments, and each invokes different portions of the "Daubert trilogy" requirement.

There is very little overlap between the two Daubert motions, essentially only the procedural history of the case (common to each motion), and the generic Daubert standard.  In contrast, there is much more in common between Defendants' Daubert motions challenging the causation opinions of Roger Spadt and of Michael Zazula, as each addresses, e.g. NFPA 921, the disfavored negative corpus methodology, and the failure of Plaintiff's experts to inspect the refrigerator they each contend was the ignition source of the fire.  But Plaintiff does not suggest – nor is there any authority to require – that Defendants should have filed one Daubert motion to

challenge both Spadt and Zazula together. Though it may be customary to file one <u>Daubert</u> motion per expert, Defendants submit that atypical is not the same as inappropriate. All told, Defendants filed three <u>Daubert</u> motions, each of which makes separate arguments, and asks for distinct relief, challenging specific opinions held by Plaintiff's experts.

     Again, Defendants motive was not to shirk the rules regarding the length of briefs, but to provide the Court with orderly and coherent arguments. The alternative suggested by Plaintiff – to file a single brief addressing all of Mr. Zazula's opinions together – would have been unwieldy for both the writer and the reader. The fact section of such a brief would have had to address the Koonses' house fire and the evidence related thereto, the principles of gas accumulation and the variables that affect whether and how LP gas ignites, the investigation by Mr. Spadt and Mr. Zazula into the cause of the fire, the design features of the range, and Mr. Zazula's suggested alternatives. The argument section would then have engaged in a detailed study of Mr. Zazula's qualifications to point out the utter lack of product design experience in his background, and then highlighted the unsupported ipse dixit that is his four suggested alternative product designs. Only then would the unified brief address the causation issues, with the hope that the reader would recall the earlier-discussed principles of gas accumulation as the brief explained why the scientific literature on this topic renders Mr. Zazula's theory implausible, and why Mr. Zazula (and Mr. Spadt) failed to follow the methodological protocols for fire investigations set forth in NFPA 921.

     Plaintiff might suggest a different organizational structure to try to obviate those problems, but the fact remains that there are two different threads to follow in challenging Mr. Zazula's opinions. The first thread involves facts regarding the design features of the range and Mr. Zazula's suggested alternative designs, case law governing the necessary qualifications to

discuss product design, Mr. Zazula's lack of qualifications in that regard, and the shortcomings of Mr. Zazula's alternative product designs. The second thread involves facts regarding how gas accumulates and the conditions under which it may ignite, case law regarding proper methodology in investigating fires, and argument regarding Mr. Zazula's failure to adhere to that methodology. Rather than try to shoehorn those two threads into one brief, Defendants chose to keep like facts with like arguments, and present them as the separate motions they truly are.

2.  *Plaintiff's arguments do not overcome Mr. Zazula's lack of qualifications to offer design opinions.*

Plaintiff's defense of Mr. Zazula's qualifications is relatively brief. Of the eight paragraphs contained in in the Qualifications section of Plaintiff's brief (Section IV.c, pages 12-15), only three actually deal with Mr. Zazula's qualifications.[1]

The primary argument made by Plaintiff is that Mr. Zazula has previously been found qualified to provide design opinions, a proposition for which Plaintiff twice cites to the Kenney v. Watts Regulator Co. case, an Eastern District decision from earlier this year. See Plaintiff's Brief, ECF Doc. No. 34-1, at 12, 13 (citing Kenney, 2021 WL 84065 (E.D. Pa. Jan. 11, 2021)). But the Kenney case does not stand for that proposition. In Kenney, Zazula's design qualifications were not at issue, because it was a separate expert – an engineer, not Mr. Zazula – that Allstate proffered to offer opinions regarding design defects and proposed alternative designs.

In Kenney, a homeowner and his insurance carrier sought to recover for water damage allegedly caused by a water pressure regulator in the homeowner's plumbing system. See

---

[1] Only the first, third, and eighth paragraphs in that section directly address Mr. Zazula's qualifications. The second paragraph is a non sequitur discussion of the malfunction theory of product liability, while the fourth through seventh paragraphs discuss Mr. Zazula's (and Mr. Spadt's) investigation, testing and methodology. This intermingling of arguments further demonstrates the difficulty of combining multiple briefs into one.

3

Kenney, supra, at *1.  As in this case, Allstate (the homeowner's insurance carrier) retained loss consultant Michael Zazula to investigate the damage.  See id. at *3.  As part of his investigation, Mr. Zazula measured the water pressure in the home, pressure tested the regulator, disassembled the regulator (jointly with all parties), observed deterioration of various components, and opined that the deterioration had caused the regulator to fail.  See id. at *8.  Unlike in this case, though, Allstate also retained an engineer, Craig Clauser, to offer product design opinions, including suggestions for alternative copper alloys that could have been used instead, see id. at *4-5, and the argument that the design of the regulator was defective, see id. at *13 ("Mr. Kenney, ***through the testimony of Engineer Clauser***, theorizes the Watts PRV's failure to use dezincification-resistant copper alloys constituted a design defect") (emphasis added).

When the defendant filed Daubert motions challenging Mr. Zazula's and Mr. Clauser's opinions, the court granted them in part, and denied them in part.  As to Mr. Zazula, the court precluded him from offering opinions criticizing the warnings in the regulator's instructions, because the homeowners had never seen or read those instructions, and those opinions therefore did not "fit" the case.  See id. at *8.[2]  Zazula was, though, allowed to testify regarding the cause of the regulator's failure.  But the defendant did not challenge Mr. Zazula's qualifications to offer that opinion; rather, it argued that his methodology was flawed because he did not explain how the three deteriorated components had contributed to the failure.  See id. at *8-*9.

Because Mr. Zazula's design qualifications were not at issue in Kenney, the district court was apparently not apprised that Mr. Zazula's CV identifies no background or experience in product design; that he has never taken a course related to product design; that he has never

---

[2] The defendant had also challenged Mr. Zazula's qualifications to offer opinions regarding product literature, but the district court did not address that argument in its opinion, apparently because it excluded those opinions on the basis of a lack of fit.  See Kenney, 2021 WL 84065 at *8.

4

published an article related to product design; that he has never designed a product and holds no patents; that he is unfamiliar with the government regulations applicable to (pertinent to this case) gas ranges, or that he has admitted to lacking expertise with respect to the design of consumer appliances.³  Again, it is unsurprising that those issues did not come up in the defendant's briefing or the court's opinion in Kenney, because it was not Mr. Zazula who offered plaintiff's design defect opinions in that case.  See Kenney, 2021 WL 84065 at *4-5 (engineer Clauser offered alternative design opinions) and *13 (plaintiff offered engineer Clauser to opine that the product was defective in its design).

Returning to this case, Plaintiff argues twice in three paragraphs that Mr. Zazula is qualified to offer design opinions because he was found to be so qualified in the Kenney case. As Defendants have shown at length, the Court made no such finding in Kenney.  Defendants urge this Court to consider instead the Yazdani case, when Mr. Zazula's design qualifications were at issue, and the district court found in a published opinion that Mr. Zazula was not qualified to offer opinions regarding alternative designs.  Yazdani v. BMW of North America, 188 F. Supp. 3d 486, 491 (E.D. Pa. 2016).

Plaintiff also argues that Mr. Zazula has "an extensive testimony list" of cases involving gas ranges and their failures, see Plaintiff's Reply Brief at 12-13, but does not discuss how many of those cases, if any, saw Mr. Zazula give design opinions.  The only case identified by Plaintiff in that regard is Kenney but, as has been shown, that case did not involve product design opinions by Mr. Zazula.  And even if Mr. Zazula has experience investigating product failures,

---

³ A copy of the Motion, Memorandum of Law, and Reply Memorandum of Law filed by the defendant in Kenney are attached as Exhibit "A" hereto for the Court's review.  Though Mr. Zazula's qualifications to discuss product warnings is raised (see for example p. 4, n. 5 of the Motion) – and, again, Mr. Zazula was precluded from offering warnings opinions - Mr. Zazula's qualifications to discuss product design is simply not addressed, likely because it was a separate expert, Mr. Clauser, who offered the product design opinions in Kenney.

5

that does not qualify him to offer opinions regarding product <u>design</u>. By way of analogy, a physician might be able to read an EKG and diagnose a problem with a patient's heart, but that does not qualify the physician to design the replacement valve needed to address the problem. Similarly, an accident reconstructionist might be able to offer a variety of details about the circumstances of a car accident, and perhaps even identify its cause, but that does not qualify him or her to design a new automobile to attempt to prevent the next such accident. So, too, here, Mr. Zazula's experience investigating appliance failures does not qualify him to offer opinions regarding the design of a gas range. <u>See</u>, <u>e.g.</u>, <u>Kerrigan v. Maxon Industries</u>, 223 F. Supp. 2d 626, 635-36 (E.D. Pa. 2002) (witness with expertise in truck maintenance and repair precluded from offering opinion as to proposed alternative designs of a cement mixer); <u>Yazdani</u>, 188 F. Supp. 3d at 491 (Michael Zazula precluded from offering product design opinions).

3.  *Plaintiff fails to address the deficiencies in Mr. Zazula's opinions regarding alternative <u>designs.</u>*

In its original brief, Defendants detailed at length the shortcomings of Mr. Zazula's opinions regarding each of his four alternative product designs: he did not investigate, study or test his proposed alternative designs, was unaware of the government regulations pertaining to those designs, could not explain how they would be incorporated into ranges of different styles, and in at least one instance, could not explain how the proposed feature worked. <u>See</u> ECF Doc. No. 25 at 10-15.

Plaintiff's reply leaves these criticisms unanswered, arguing in conclusory fashion that "Mr. Zazula painstakingly detailed his alternate design opinions," and then simply listing the names of the four alternate design features. <u>See</u> ECF Doc. No. 35-1 at 15. The deposition testimony cited by Plaintiff is the very same deposition testimony cited by Defendants, wherein Mr. Zazula admitted his lack of investigation, testing, and knowledge.

6

Further, even taking Plaintiff's argument at face value, simply describing an alternate design feature is insufficient to satisfy the Daubert standard.  See, e.g.  Shannon v. Hobart, 2011 WL 442119, *4-5 (E.D. Pa. Feb. 8, 2011) (simply examining a product and declaring an additional guard could have made it safer is an insufficient, unreliable methodology); see also Montgomery v. Mitsubishi Motors Corp., 448 F. Supp. 2d 619, 631 (E.D. Pa. 2006) (excluding opinions of expert who conducted no testing regarding his proposed alternative design); Florio v. Ryobi Techs., 2020 WL 5234924, *6-7 (D.N.J. Sept. 2, 2020) ("performing detailed studies and tests represents the touchstone of what an engineering expert in a design defect case should do"); Booth v. Black & Decker, Inc., 166 F. Supp. 2d 215, 221 (E.D. Pa. 2001) (expert precluded when he did not test his proposed alternative design or do any practical research into how it could be incorporated into the product at issue).

For these reasons, and for all the reasons set forth in Defendants' original Daubert Motion and accompanying brief, Michael Zazula should be precluded from testifying regarding issues of product design, including testimony regarding proposed alternative designs.

                                                    **MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By:   */s/ Michael A. Salvati*
       MICHAEL A. SALVATI
       Attorney ID. No. 311682
       Attorney for Defendants
       2000 Market Street, Suite 2300
       Philadelphia, PA  19103
       215-575-4552 (P) / 215-575-0856 (F)
       masalvati@mdwcg.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Allstate Property and Casualty Insurance Company a/s/o Duane and Sheri Koons<br><br>Plaintiff<br>v.<br><br>Haier US Appliance Solutions, Inc. d/b/a GE Appliances and General Electric Company<br><br>Defendants | Civil Action No: 1:20-cv-00365-CCC<br><br>(Hon. Christopher C. Conner, J.)<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Reply Brief in Support of Defendants' *Daubert* Motion to Preclude Plaintiff's Expert, Michael Zazula, from Offering Opinions Regarding Design was served this date, via the court's electronic filing system, to the following person:

Kevin M. Kelly
de LUCA LEVINE LLC
Three Valley Square, Suite 220
Blue Bell, PA 19422

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY: */s/ Michael A. Salvati*
MICHAEL A. SALVATI
Attorney for Defendants

**DATED:** June 24, 2021