### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLSTATE PROPERTY AND** | : | **CIVIL ACTION NO. 1:20-CV-365** |
| **CASUALTY INSURANCE COMPANY** | : | |
| **a/s/o DUANE AND SHERI KOONS,** | : | **(Judge Conner)** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HAIER US APPLIANCE SOLUTIONS,** | : | |
| **INC. d/b/a GE APPLIANCES and** | : | |
| **GENERAL ELECTRIC COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Allstate Property and Casualty Insurance Company ("Allstate"), as subrogee of Duane and Sherri Koons, brings a state-law products liability and subrogation action against defendants Haier US Appliance Solutions, Inc. ("Haier"), doing business as GE Appliances, and General Electric Company ("General Electric") (collectively "defendants") related to a fire at the Koonses' home in Lebanon, Pennsylvania, on June 9, 2018.  Defendants move to exclude from evidence the testimony of two expert witnesses and for summary judgment on all of Allstate's claims.  We will grant in part and deny in part defendants' motions.

# I.    Factual Background & Procedural History[1]

## A.    The Fire

Duane and Sherri Koons purchased a new stove from Home Depot sometime in 2012.  (See Doc. 32 ¶ 47; Doc. 32-5, D. Koons Dep. 16:11-17:14).  The Koonses settled on a General Electric-brand gas range, model number JGB987SEM1SS.  (See Doc. 32 ¶ 17).  Although purchased in 2012, the Koonses' stove was originally manufactured in 2007, (see id. ¶ 46), on behalf of General Electric by Leiser, a joint venture between General Electric and an entity domiciled in Mexico, (see Doc. 36-3, Ex. D, Bowles Dep. 27:13-28:20).  In 2016, General Electric transferred its appliance business, including all employees and facilities, to Haier.  (See Doc. 1-4 ¶ 6; Bowles Dep. 30:19-31:22).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 32, 37).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

In addition to providing responses to each of defendants' statements of fact, Allstate's responsive statement includes 69 paragraphs styled as "Additional Facts Precluding Entry of Summary Judgment."  Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and Allstate did not request leave of court therefor.  Although these additional paragraphs do not conform to our rules, we have examined them; the statements contained therein do not affect our analysis of defendants' motion.

Key to the litigation at hand, the Koonses' stove employed push-to-turn burner control knobs.  (See Doc. 32 ¶ 18).  Push-to-turn control knobs require two forces to activate: the user must first push the knob inward and then turn the knob to the desired setting.  (See id.; Doc. 32-8 at 7).  The stove also lacked a flame rectification system.  (See Bowles Dep. 131:3-23; Doc. 32-9, Zazula Dep. 22:11-24:12).  Flame reification systems normally take the form of a sensor that monitors when the gas being released is actually burning.  (See Zazula Dep. 22:11-24:12; Bowles Dep. 149:21-150:16).  If there is gas flowing through the valve but not flame, the rectification system automatically activates the ignitor.  (See Zazula Dep. 22:11-24:12; Bowles Dep. 149:21-150:16).  In addition, it is important to note that the Koonses converted their new stove to operate using LP gas[2] because their home lacked access to natural gas.  (See D. Koons Dep. 18:22-20:9; Doc. 32-4, S. Koons Dep. 28:20-32:12).

On either June 6 or 7, 2018, Sherri Koons cleaned the kitchen, as was her custom, before she and her husband left on vacation.  (See Doc. 32 ¶ 7).  Early in the morning on June 9, 2018, Duane Koons received a phone call informing him that his house was on fire.  (See id. ¶ 2; D. Koons Dep. 36:12-37:11).  By the time the Koonses returned home, local firefighters had extinguished the fire, (see D. Koons Dep. 37:15-17), but not before the fire caused extensive damage to the Koonses' home,

---

[2] The documents and testimony submitted in this matter refer to the fuel used by the Koonses' stove by a variety of names including "LP," "LP gas," "liquid petroleum," and "propane."  The court understands all these terms to refer to the same substance.

(see id. at 56:22-57-14, 63:15-69:6).  Fire Chief Brian Vragavich, one of the first firefighters into the home, informed Duane Koons that he noticed at least one of the burner knobs on the Koonses' stove was in an "on" position.  (See id. at 41:3-42:6; see also Doc. 32 ¶ 12).  Upon hearing Vragavich's observation, Duane Koons asserted it was "impossible" he or his wife left the stove on.  (See D. Koons Dep. 42:1-6).  Both Duane and Sherri Koons disclaim ever having accidentally activated the burners in the approximately six years they owned the stove.  (See id. at 61:22-62:18; D. Koons Dep. 42:23-44:6).

The Koonses held a homeowners insurance policy on their house with Allstate, and Allstate paid out insurance benefits to the Koonses as a result of the fire.  (See Doc. 32 ¶ 3).  In the aftermath of the fire, Allstate retained two fire investigators to ascertain the cause of the fire: Roger Spadt and Michael Zazula.  (See Zazula Dep. 64:17-19; Doc. 29-1 at 2).

### B.    Spadt's Investigation

An experienced firefighter and fire investigator, (see Doc. 29-6 at 2-3), Spadt visited the Koonses' home to examine the scene of the fire three times, twice with Zazula, (see Doc. 29-1 at 3-4).  Spadt took numerous pictures and interviewed the Koonses and Rusty Weitzel, who oversaw the firefighting effort on June 9, 2018.  (See id. at 7-9).  Like Vragavich, Spadt found two of the burners on the Koonses' stove to not be in the "off" position.  (See id. at 6).  Spadt concluded the fire originated in the area around the Koonses' stove.  (See id. at 7).  Lacking expertise in fires related to stoves, LP gas, and natural gas, Spadt consulted with Zazula, who specialized in these areas.  (See Doc. 32-15, Spadt Dep. 12:16-13:8, 44:14-23).  After

consulting with Zazula, Spadt concluded the cause of the fire was the stove's "right rear and left front burner control knobs not being in the 'off' position, which allowed the LP gas to flow from the burners' valves." (See Doc. 29-1 at 12; see also Spadt Dep. 12:16-13:8). According to Spadt's report, the "fugitive gas" from the two valves, being heavier than air, accumulated in the area around the stove and the refrigerator likely ignited the gas. (See Doc. 29-1 at 12).

### C.    Zazula's Investigation

Zazula is a specialist in fires involving LP gas, natural gas, and mechanical and electromechanical failures. (See Doc. 25-8 at 2-5). Zazula accompanied Spadt on a pair of visits to the Koonses' home and conducted a series of tests on the Koonses' stove and an identical exemplar stove. (See Doc. 25-1 at 4-9). Zazula also identified two burner knobs on the Koonses' stove as not being in the "off" position. (See id. at 14). Using the conclusion Spadt developed in consultation with Zazula as his starting point, (see id. at 3), Zazula concluded the fire was likely caused by accidental manipulation of the burner control knobs while Sherri Koons was cleaning the stove, (see id. at 11, 14-15; Zazula Dep. 180:19-181:22, 184:20-186:2). However, Zazula does not confine his report to merely ascertaining the cause of the fire. Zazula also asserts the design of the Koonses' stove is unsafe, offers several alternative components he believes would have prevented the fire had they been incorporated into the design of the stove, and attacks the adequacy of the warnings included with the stove. (See Doc. 25-1 at 12-15).

### D.    Procedural History

Allstate filed the instant products liability action against defendants in the Court of Common Pleas of Lebanon County, Pennsylvania, alleging defendants are responsible for the fire damage to the Koonses' home. Defendants timely removed the suit to this court. Following a period of discovery, defendants filed three motions *in limine* contesting the admissibility of Spadt's and Zazula's expert testimony as well as a motion for summary judgment. The motions are fully briefed and ripe for disposition.

## II.   <u>Legal Standards</u>

### A.   **Expert Testimony**

Admissibility of expert testimony is governed by Federal Rule of Evidence 702. <u>See</u> FED. R. EVID. 702; <u>see also</u> <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 588-89 (1993). Trial courts must act as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is . . . reliable." <u>Daubert</u>, *509 U.S.* at 589. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Third Circuit Court of Appeals has explained that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." <u>Schneider *ex rel.* Estate of Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003)

(citation omitted).  Rule 702 embraces a "liberal policy of admissibility," pursuant to which it is preferable to admit any evidence that may assist the trier of fact.  <u>See</u> <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 243 (3d Cir. 2008) (quoting <u>Kannankeril</u> <u>v. Terminix Int'l, Inc.</u>, 128 F.3d 802, 806 (3d Cir. 1997)).

  **B. Summary Judgment**

  Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>See</u> <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor."  <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed. <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III. <u>Discussion</u>

  Allstate's products liability claims stand or fall on a single question: whether Allstate can adduce sufficient evidence for a reasonable jury to find the accidental manipulation of the burner-control knobs on the Koonses' stove caused the fire.

The only evidence Allstate presents supporting its fire causation theory comes from the fire investigators, Spadt and Zazula. Defendants have attacked the admissibility of both experts' opinions. Accordingly, we must first resolve defendants' challenges to Allstate's proffered experts before we can assess the merits of defendants' motion for summary judgment.

### A.    Expert Witnesses

Underlying Allstate's theory of the case are two fundamental factual questions: (1) "causation" (*i.e.*, what caused the fire in the Koonses' house) and (2) "design" (*i.e.*, whether the defendants should have designed the Koonses' stove to lessen or eliminate the risk of accidental gas release). Allstate intends to submit expert testimony from Spadt on causation and Zazula on both causation and design.

Rule 702 requires that expert testimony must be given by a qualified individual who uses a reliable methodology that fits the circumstances of the case. See FED. R. EVID. 702; Schneider, 320 F.3d at 404. An expert witness must be qualified to testify as such by possessing "specialized expertise." Schneider, 320 F.3d at 404. The requisite expertise can include "a broad range of knowledge, skills, and training." Id. (quoting *In re* Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)). Such expertise can also be "practical" as well as "academic." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000) (citation omitted). Our court of appeals has emphasized that this first requirement should be interpreted "liberally" and permits "generalized qualifications" rather than "overly rigorous requirements of expertise." *In re* Paoli, 35 F.3d at 741.

Expert testimony is "reliable" when it is based upon sound methodology and technique.  See id. at 742.  The touchstone is whether the expert's methodology is "sufficiently reliable so that it will aid the jury in reaching accurate results."  Id. at 744 (internal quotation marks omitted).  An expert opinion cannot be based on "subjective belief and unsupported speculation."  UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 834 (3d Cir. 2020).  However, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness."  In re Paoli, 35 F.3d at 744.  Our court of appeals has explained that "[a]s long as an expert's scientific testimony rests upon 'good grounds, based on what is known,'" it should be admitted.  United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (citation omitted); Kannankeril, 128 F.3d at 806 ("Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined.").

The Third Circuit has enumerated several factors to guide the court's reliability inquiry:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Pineda, 520 F.3d at 247-48 (citing In re Paoli, 35 F.3d at 742 n.8).  This list of factors is a "convenient starting point," but is "neither exhaustive nor applicable in every

case." <u>Kannankeril</u>, 128 F.3d at 806-07.  United States Supreme Court precedent emphasizes that "relevant reliability concerns may focus upon personal knowledge or experience."  <u>See</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150 (1999). Accordingly, the Rule 702 reliability inquiry is "a flexible one," and the factors considered must be applicable to the facts of the case.  <u>Id.</u> (quoting <u>Daubert</u>, 509 U.S. at 594).

Expert testimony must also be "sufficiently tied to the facts of the case, so that it 'fits' the dispute and will assist the trier of fact."  <u>UGI Sunbury</u>, 949 F.3d at 832 (internal quotation marks omitted).  The concept of fit "is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."  <u>Id.</u> at 835 (quoting <u>Daubert</u>, 509 U.S. at 591).  Specialized or scientific knowledge may still be excluded if it is not specialized knowledge "for the purposes of the case."  <u>Id.</u> (quoting <u>In re</u> <u>Paoli</u>, 35 F.3d at 743).  Whether an expert's testimony fits the dispute is not an exacting standard but "is higher than bare relevance."  <u>United States v. Schiff</u>, 602 F.3d 152, 173 (3d Cir. 2010) (quoting <u>In re</u> <u>Paoli</u>, 35 F.3d at 745).

### 1.  *Spadt on Causation*

Spadt is a professional fire investigator.  (<u>See</u> Doc. 29-6 at 1).  Spadt began investigating the origins of the fire at the Koonses' home shortly after the fire was extinguished.  (<u>See</u> Doc. 29-1 at 1, 4; D. Koons Dep. 45:2-46:7).  Spadt produced an expert report for purposes of this litigation detailing his investigation and opinions as to the fire's origins.  (<u>See</u> Doc. 29-1).  He comes to two conclusions: (1) the fire in the Koonses' home originated in the area around the Koonses' stove, and (2) the fire

was likely caused by fugitive LP gas released from the burner valves of the stove which accumulated in the origin area and was ultimately ignited by the refrigerator. (See id. at 13). Defendants do not contest Spadt's competence to present his first conclusion as to the location of the fire's origin. (See Doc. 29 at 5, 8). Defendants solely challenge Spadt's qualifications to opine on the cause of the fire and the methodology Spadt used to arrive at his conclusion as to that cause. (See id. at 4-15).

Spadt's overall qualifications as a fire investigator are unimpeachable. The International Association of Arson Investigators, the National Board on Fire Service Professional Qualifications, the Pennsylvania State Fire Commissioner, and the National Association of Fire Investigators have all certified his competence as a fire investigator. (See Doc. 29-6 at 1-2). He has more than 30 years' experience as a firefighter and more than 25 years' experience as a fire investigator. (See id. at 1). Spadt has also attended an extensive list of fire-investigation-related courses and seminars. (See id. at 2-10).

Acknowledging Spadt's credentials, defendants focus on the relationship between Spadt's credentials and the precise conclusion he offers about the cause of the fire. The paragraph of Spadt's report asserting his opinion as to the fire's cause reads as follows:

> In consultation with Engineering Consultant Michael Zazula, he indicated this fire was caused by the [Koonses' stove]'s right rear and left front burner control knobs not being in the "Off" position, which allowed the propane gas to flow from the burners' valves, thus becoming fugitive gas within the area of origin. Because propane gas is heavier than air and has a specific gravity of

> approximately 1.5 to 2.0, it will sink in air and likely
> accumulate in varied lower locations within the area of
> origin.  The fugitive propane gas was likely ignited by the
> operating refrigerator.

(Doc. 29-1 at 13).  Spadt describes his conclusion as being made in "consultation"

with Zazula, but Spadt also attributes the fundamental premise of his conclusion—

that the fire was caused by fugitive LP gas released from the Koonses' stove—

entirely to Zazula.  (See id.)  When describing the evidence pointing toward the

stove as being involved in causing the fire, Spadt details the physical state of the

Koonses' stove and then instructs the reader to "[p]lease refer to the expert report

prepared for this fire by Engineering Consultant Michael Zazula for a detailed

explanation."  (See id. at 12).  Spadt's description of the evidence supporting the

refrigerator as the ignition point for the fire includes a similar suggestion the reader

refer to Zazula's report.  (See id.)  Curiously, Spadt included his statements relying

on Zazula's report without actually having seen it.  (See Spadt Dep. 12:16-13:14).

Spadt's reliance on Zazula is understandable.  Spadt specifically and

repeatedly disclaims being an expert in gas range, LP gas, and other gas-related

fires.  (See Spadt Dep. 44:14-20, 83:19-84:3, 84:22-23, 167:17-21, 190:9-13, 196:12-17,

202:22-203:3, 234:1-3).  Zazula is an expert in those fields.  (See id. at 197:10-15,

234:2-3).  When Spadt is asked how he arrived at his conclusion about the cause of

the fire, he consistently expresses a total reliance on Zazula's expertise in virtually

every significant factual, mechanical, and scientific aspect of his purported theory

of fire causation. (See id. at 156:15-22, 166:19-167:20, 168:8-13, 186:21-187:6, 189:21-

191:15, 193-197:8-19, 200:23-201:12, 236:5-15, 237:21-238:5).  He confesses

unfamiliarity with the lower explosive limit for LP gas—the minimum gas density necessary for the gas to ignite.  (See id. at 193:17-195:2).  He admits having no functional knowledge as to how the refrigerator could have ignited the alleged accumulated LP gas.  (See id. at 200:23-204:18)

Spadt, by his own admission, simply does not have "specialized knowledge" about the core instruments of his fire-causation theory—LP gas, gas stoves, and refrigerators.  See Schneider, 320 F.3d at 404.  Accordingly, Spadt is not qualified to offer his second conclusion to the finder of fact.[3]  We will grant the defendant's motion in limine to limit Spadt's testimony.

### 2.   Zazula on Causation

Like Spadt, Zazula's qualifications as a fire investigator are lengthy.  He is certified as a fire investigator by the National Association of Fire Investigators with almost 20 years' experience investigating fires resulting from mechanical and

---

[3] Allstate invokes the fire investigation methodology promulgated by the National Fire Protection Association ("NFPA"), specifically the NFPA 921 handbook.  (See Doc. 33-1 at 12; Doc. 33-3 at 114).  Allstate correctly asserts that the NFPA 921 allows for fire investigators to consult experts.  (See Doc. 33-1 at 12; Doc. 33-3 at 114).  But even if we found Spadt to be qualified to present his second conclusion, we would still have to exclude his expert testimony on reliability grounds.  Despite Spadt's protestations otherwise, it is clear Spadt did not consult with Zazula so much as adopt Zazula's opinion wholesale without doing anything to confirm the accuracy of that opinion.  See In re TMI Litig., 193 F.3d 613, 716 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000).  Spadt did no calculations of his own as the rate of flow of LP gas from the Koonses' stove or the lower explosive limit.  (See Spadt Dep. 193:10-13, 194:22-195:9).  He did no experiments of his own with the Koonses' stove.  (See id. at 194:22-195:9).  He never examined the refrigerator.  (See id. at 203:21-204:14).  Because he is unfamiliar with the science supporting his purported conclusion, the validity of his conclusion could not be tested by cross-examination.  See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 292-93 (3d Cir. 2012). Hence, his methodology of adoption "was not calculated to produce reliable results."  See In re TMI, 193 F.3d at 716.

electromechanical failures.  (See Doc. 25-8 at 2).  He is experienced in fires involving LP gas, natural gas, and appliances.  (See id. at 1; Zazula Dep. 40:22-44:19).  He has also conducted numerous seminars on fire investigation, many specifically on the topic of fires involving gas leaks.  (See Doc. 25-8 at 3).  Consequently, defendants do not challenge Zazula's qualifications to testify as to the cause of the fire in the Koonses' home.  Instead, they argue Zazula, while qualified, employed an insufficiently reliable methodology in determining the source of the fire, (see Doc. 27 at 8-15), and that his testimony does not "fit" the facts of the case, (see id. at 6-8).

### a.   **Methodology**

Zazula asserts he arrived at his findings by following the methodology defined in the NFPA 921 handbook.  (See Doc. 27-1 at 3-4).  The NFPA 921 method, in turn, is derived from the scientific method and relies on "the collection of data through observation and experimentation," analyzing said data, and "evaluating and testing of a hypothesis."  (See id. at 4).  Following that methodology,[4] Zazula examined the scene of the fire repeatedly, reviewed the testimony of witnesses, and engaged in extensive testing of the Koonses' stove and an identical exemplar stove. (See id. at 4-9; Zazula Dep. 104:13-109:23).

Nonetheless, defendants argue Zazula's opinion as to the fire's origin is insufficiently reliable because of errors in how Zazula applied the NFPA 921

---

[4] Defendants contend Zazula disavowed the NFPA 921 analysis in his deposition, (see Doc. 27 at 10), but this is a misreading of Zazula's statement.  The context makes clear that Zazula was referring to some aspects of the NFPA 921 method—not the entirety of the NFPA 921 method—being inapplicable to his investigation.  (See Zazula Dep. 74:14-75:14).

methodology.  (See Doc. 27 at 9-10).  Defendants advance several criticisms of

Zazula's conclusions, the most substantial of which center around Zazula's failure

to test whether the refrigerator could have actually ignited the LP gas; account for

outside variables likely to influence how, when, and if the LP gas caught fire;

adequately explain why the ignition of the LP gas caused a fire instead of an

explosion; and ascertain tangible proof that LP gas was actually discharged from

the Koonses' stove.  (See id. at 8-15).  Defendants' criticisms are not without weight,

but they do not merit precluding the finder of fact from hearing Zazula's testimony.

Cross-examination and counter testimony are the appropriate avenue for attacking

the credibility of Zazula's testimony.  See ZF Meritor, 696 F.3d at 290; Walker

v. Gordon, 46 F. App'x 691, 696 (3d Cir. 2002) (nonprecedential).

### b.   Fit

The fundamental premise of Zazula's analysis is that the fire at the Koonses'

home was caused by Sherri Koons accidentally activating at least one of the burner

control knobs on the Koonses' stove before leaving with her husband on vacation.

Both Duane and Sherri Koons deny accidentally leaving the stove on, and Duane

Koons goes so far as to declare the notion they did so "impossible."  (See S. Koons

Dep. 62:11-63:21, 81:10-16; D. Koons Dep. 40:24-44:6).  Defendants point to these

denials as showing Zazula's expert opinion as to the cause of the fire does not fit the

facts of the case.  (See Doc. 27 at 6-8).

We are unpersuaded.  First, inherent in the idea of accidentally activating a

burner control knob is the possibility one might not realize they activated the knob.

Duane Koons' impossibility assertion appears to rely on his belief that (1) he would

have heard the clicking of the ignitor, (see D. Koons Dep. 28:11:30:6), and (2) his wife, with her acclaimed "whiffer," would have smelled the gas, (see id. at 23:13-18, 58:11-17). However, Zazula determined through a series of tests on the Koonses' stove and an identical stove that it is possible to turn the burner control knob in ways that open the gas valve but do not activate the ignitor. (See Doc. 25-1 at 7-8). Zazula also explains in his deposition that LP gas, unlike natural gas, might not necessarily be smelled when released in moderate quantities because it is heavier than air. (See Zazula Dep. 172:10-177:18). Second, Duane Koons reports the firefighters responding to the fire found the burner control knobs activated. (See D. Koons Dep. 41:3-10). Similarly, Zazula and Spadt found the stove to be leaking LP gas through open burners during their June 22, 2018 inspection. (See Doc. 25-1 at 6; Zazula Dep. 79:7-10, 81:3-13).

Whether the fire at the Koonses' home was caused by the accidental discharge of LP gas from the Koonses' stove is an open question. Defendants may yet prove at trial that Zazula's theory of causation is entirely mistaken. But as it stands, Zazula's opinion fits the facts of the case. We will deny defendants' motion *in limine* as to Zazula's opinion on causation.

### 3.   *Zazula on Design*

Allstate's strict liability design defect and negligent design claims require the finder of fact to consider whether defendants' design of the Koonses' stove or defendants' design process was somehow inadequate. To assist the finder of fact in considering that question, Allstate intends to present expert testimony from Zazula on the design of the Koonses' stove. Defendants challenge Zazula's competence to

testify as to any aspect of the stove's design on the grounds that Zazula is not a qualified expert in stove design and, in the alternative, employed an unreliable methodology in coming to his design-related conclusions. (See Doc. 25 at 3).

Zazula's qualifications to speak to the design of the Koonses' stove are not so clear as his fire-investigation credentials. Zazula is not an engineer. (See Doc. 25-8 at 1-2; Zazula Dep. 40:13-40:14). He holds no patents. (See Zazula Dep. 50:11-50:12). He has never substantively contributed to the design of a commercially available product, let alone the design of a consumer gas stove. (See id. at 48:17-55:19). In his deposition, Zazula describes conducting "in excess of 2,000" investigations of mechanical failures throughout his career, "between 30 and 50" of which involved gas ranges. (See id. at 42:19-43:11). Zazula's investigations throughout his career appear to have been just that—strictly investigations unrelated to any redesign of the product or mechanism in question. For example, Zazula worked with engineers at Volkswagen for several years to purportedly redesign certain pieces of automotive machinery, but his contribution consisted solely of identifying which aspect or design of the machine caused it to fail and then reporting his observations to the design team. (See id. at 45:11-52:19).

In support of Zazula's design qualifications, Allstate points to Zazula's "extensive and relevant prior testimony on [design]." (See Doc. 34-1 at 12). Zazula professes to have provided expert testimony on numerous occasions in both state and federal court, (see Doc. 34-3 at 161-63), but the only example Allstate proffers of him being qualified to speak on design is a case from the Eastern District of Pennsylvania, (see id. at 13; see also Zazula Dep. 49:20-50:2). Allstate's briefing

identifies that case as <u>Kenney v. Watts Regulator Co.</u>, 512 F. Supp. 3d 565 (E.D. Pa.
2021). (<u>See</u> Doc. 34-1 at 13). However, in <u>Kenney</u>, Zazula was not found to be
qualified to speak to design; he was only found competent to speak to why a valve
designed to regulate water pressure failed. <u>See</u> <u>Kenney</u>, 512 F. Supp. 3d at 570, 579-
80. The court's decision does not mention Zazula proffering an alternative design,
let alone consider whether he was qualified to speak on design. <u>See</u> <u>id.</u> at 573-74.

For the above reasons, we find Zazula is not generally qualified to offer
opinions on stove design. Nonetheless, Zazula has extensive experience as an
investigator of mechanical and electromechanical fires, and substantial experience
pertaining to stove-related fires, particularly his investigation of "half a dozen"
stove fires related to accidental activation. (<u>See</u> Zazula Dep. 43:8-12, 44:10-19). His
experience gives him the ability to speak to some areas of the stove's design likely to
be at issue before the finder of fact—namely the fire risks associated with a
particular stove component or design. Hence, we find Zazula qualified to opine on
the fire-safety risks associated with the design of the Koonses' stove. However,
Zazula is not qualified to express opinions on the mechanical or financial feasibility
of any design alterations, nor the viability or utility to consumers of any proffered
alternative design. Zazula is also not qualified to express opinions as to whether
defendants were negligent in designing the Koonses' stove. We will grant in part

and deny in part defendant's motion *in limine* to exclude Zazula's testimony on design. [5]

### B.    Summary Judgment

#### 1.    *Count I: Strict Liability*

Under Pennsylvania law, to prevail on a strict liability claim related to a consumer product, a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the defendant's hands; and (3) the defect caused harm to the plaintiff.  See Barton v. Lowe's Home Ctrs., Inc., 124 A.3d 349, 354-55 (Pa. Super. Ct. 2015) (citing Riley v. Warren Mfg., Inc., 688 A.2d 221, 224 (Pa. Super. Ct. 1997)).  Pennsylvania courts acknowledge three categories of defect: design defect, manufacturing defect, and failure to warn.  See Barton, 124 A.3d at 355.  Allstate's complaint alleges the Koonses' stove implicated all three categories of defect.  (See Doc. 1-2 ¶ 21).  Allstate now concedes discovery produced no evidence of a manufacturing defect, (see Doc. 36-1 at 11), but maintains the Koonses' stove was defective in design and did not come with adequate warnings, (see id. at 4-10, 11-12).

#### a.    **Strict Liability Design Defect**

Pennsylvania law affords plaintiffs two pathways to proving a product was defective in design: a plaintiff may prove that (1) the danger posed by the product is unknowable and unacceptable to the average or ordinary consumer, *i.e.*, the

---

[5] As we have found Zazula unqualified to speak on the substance of stove design, we do not reach defendants' arguments related to the reliability of Zazula's methodology.

consumer expectations test, or (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precaution, *i.e.*, the risk-utility test.  See <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328, 335, 387, 389-90, 399 (2014).  Allstate argues the design of the Koonses' stove was defective under both theories.  (<u>See</u> Doc. 36-1 at 4-10).  Whether a product is defective "is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue."  <u>See</u> <u>Sikkelee v. Precision Airmotive Corp.</u>, 907 F.3d 701, 716 (3d Cir. 2018) (quoting <u>Tincher</u>, 104 A.3d at 335).

Defendants argue Allstate's defective design claim must fail because "there is no competent evidence beyond mere conjecture that accidental activation of the burner control knobs actually <u>did</u> happen in this case."  (<u>See</u> Doc. 31 at 6-10).  Defendants are mistaken.  We find there is substantial evidence to support Allstate's accidental-manipulation theory.  First, the firefighters who put out the fire at the Koonses' home, both of Allstate's fire investigators, and defendants' own fire investigator, Donald Hoffman, all found the burner control knobs to be activated.  (<u>See</u> Doc. 32-8 at 4; Doc. 32-2 at 6, 8, 33-35; Doc. 32-11 at 10, 12; <u>see also</u> S. Koons Dep. 60:24-62:5; D. Koons Dep. 40:24-41:20).  Second, Zazula and Hoffman both agree that the cause of the fire was the manipulation of the burner control knobs,

though they differ on whether the manipulation was accidental or intentional.[6]

(<u>See</u> Doc. 32-11 at 16-17; <u>see also</u> Zazula Dep. 180:19-181:22, 184:20-186:2).  Third,

Zazula's and Hoffman's tests of the Koonses' stove and an identical exemplar stove

show that accidental manipulation of the burners without triggering the ignitor is

mechanically possible.  (<u>See</u> Doc. 32-8 at 7-8; Doc. 32-11 at 14).

Defendants point to the Koonses' testimony as conclusively disproving

Allstate's theory of causation.  (<u>See</u> Doc. 31 at 6-7).  Both Duane and Sherri Koons

deny ever having accidentally manipulated the burner control knobs such that the

ignitor activated or that they smelled LP gas.  (<u>See</u> D. Koons Dep. 28:4-30:6; S.

Koons Dep. 84:6-86:18).  When Vragavich informed Duane Koons that firefighters

found at least one of the burner control knobs on the stove to be in an "on" position,

Koons reports replying it was "impossible" that he or his wife left the burner

control knob on.  (<u>See</u> D. Koons Dep. 41:3-42:6).  Certainly, the Koonses' statements

lean against Allstate's theory of causation, but, as we observed in our analysis *supra*,

they are not conclusive.  The contradiction between the Koonses' statements and

the expert opinions of Spadt and Zazula, (<u>see</u> Doc. 32-8 at 7-8; Doc. 32-11 at 14;

Zazula Dep. 172:10-177:18), creates a genuine dispute of fact as to whether

---

[6] Defendants' fire investigator, Hoffman, concludes the fire was caused by Sherri Koons leaving the burner on when she and her husband left for vacation. (<u>See</u> Doc. 32-11 at 9, 16-17).  The unattended burner then ignited "foodstuff or combustible material" left on the cooktop.  (<u>See</u> <u>id.</u>)  Although disqualified from speaking to the ultimate cause of the fire, <u>see</u> *supra* at 12-13, Spadt's supplemental report provides a rebuttal of Hoffman's theory, which adds additional support to Allstate's accidental manipulation theory, (<u>see</u> Doc. 32-7 at 8-9).

accidental manipulation of the burner control knobs on the Koonses' stove caused the fire.  Accordingly, we will deny defendants' motion for summary judgment.

### b.    <u>**Strict Liability Failure to Warn**</u>

A defendant may be liable on a failure-to-warn theory under Pennsylvania law if the defendant distributes a product "without sufficient warnings to notify the ultimate user of the dangers inherent in the product."  <u>See</u> <u>Phillips v. A-Best Prods. Co.</u>, 665 A.2d 1167, 1171 (Pa. 1995) (quoting <u>Mackowick v. Westinghouse Elec.</u>, 575 A.2d 100, 102 (Pa. 1990)).  Plaintiffs must establish both that the product was sold in an "unreasonably dangerous" condition and that the failure to warn about the danger caused their injury.  <u>See</u> <u>id.</u> (quoting <u>Walton v. Avco Corp.</u>, 610 A.2d 454, 458 (Pa. 1992)).

The primary point of contention at this stage of litigation is causation.  Establishing causation requires a plaintiff to demonstrate a different or additional warning by the seller would have caused the plaintiff to avoid the risk.  <u>See</u> <u>id.</u> (citing <u>Sherk v. Daisy–Heddon</u>, 450 A.2d 615, 617, 619 (Pa. 1982) (plurality opinion)).  Proof that an individual read the manual is insufficient to establish causation when there is no evidence the individual would have heeded or remembered the warning at the decisive moment.  <u>See</u> <u>Conti v. Ford Motor Co.</u>, 743 F.2d 195, 198-99 (3d Cir. 1984).

Defendants contend there is no proof that any change to the warnings or instructions included with the Koonses' stove would have prevented the accidental activation of the burner control knobs because neither Duane nor Sherri Koons made a meaningful effort to ever read the warnings or instructions.  (<u>See</u> Doc. 31 at

10-12).  Duane Koons states he never read the instructions and expresses doubt as
to whether the stove even came with a manual.  (See D. Koons Dep. 62:16-24).
Sherri Koons admits there was a manual and asserts she read at least some
portions of it.  (See S. Koons Dep. 93:8-9).  Nonetheless, the only section Sherri
Koons remembers reading is a portion related to the stove's motherboard, not the
operation of the stove's knobs.  (See id. at 96:11-19).  Moreover, Allstate's theory of
causation depends on Sherri Koons accidentally manipulating the burner control
knobs—that is, in a moment where she, by definition, was not paying attention to
her conduct.  Cf. Staymates v. ITT Holub Indus., a Div. of Int'l Tel. & Tel. Corp., 527
A.2d 140, 147 (Pa. 1987) (holding a warning, as a matter of law, could not have
prevented an accident when plaintiff was acting on instinct and "had no time to
consider his options").

Allstate insists a warning would have made a difference but offers no theory
as to how a different or additional warning could have prevented the fire.  (See Doc.
36-1 at 11-12).  Without even a theory of causation, we must find Allstate's
contention that a different warning could have prevented the fire at the Koonses'
home to be mere speculation.  Mere speculation about causation is insufficient for a
failure-to-warn claim to survive a motion for summary judgment.  See Conti, 743
F.2d at 198–99; Flanagan v. martFIVE, LLC, 259 F. Supp. 3d 316, 321 (W.D. Pa.
2017); see also Wharton v. Danberg, 854 F.3d 234, 244 (3d Cir. 2017).  Allstate has
failed to produce any evidence from which a reasonable jury could determine the

additional or different warnings would have prevented the fire.  Hence, defendants are entitled to summary judgment on Allstate's failure-to-warn claim.

### 2.   *Count II: Negligence*

Defendants move for summary judgment on Allstate's negligence claim in its entirety.  (See Doc. 31 at 6, 14-15).  A negligence claim under Pennsylvania law requires proof of four elements: (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) a causal link between the conduct complained of and the injury in question, and (4) actual loss or damage resulting to the plaintiff.  See Farabaugh v. Pa. Tpk. Comm'n, 911 A.2d 1264, 1272-73 (Pa. 2006) (citing R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005)); Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009) (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003)).

Allstate's complaint offers a laundry list of theories under which defendants may have been negligent in relation to the Koonses' stove.  (See Doc. 1-2 ¶¶ 24-26).  At the motion for summary judgment stage, however, Allstate must support their negligence claim with facts in the record.  See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citing Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109–10 (3d Cir. 1985)).  Allstate does not and cannot point to any facts in the record supporting the majority of the proffered negligence theories.  Although defendants moved for summary judgment on all negligence theories, the only theories Allstate specifically argues are supported by facts in evidence are its claims for negligent design and negligent failure to warn.  (See Doc. 36-1 at 14-16).  Accordingly, we find Allstate has abandoned all of its negligence

claims other than negligent design and negligent failure to warn.  See <u>Pennsylvania</u> <u>Pro. Liab. Joint Underwriting Ass'n v. Wolf</u>, 509 F.Supp.3d 212, 223 (M.D. Pa. 2020) (Conner, C.J.) (collecting cases); <u>Malibu Media, LLC v. Doe</u>, 381 F. Supp. 3d 343, 361 (M.D. Pa. 2018) (Conner, C.J.) (citing <u>Stauffer v. Navient Sols., LLC</u>, 241 F. Supp. 3d 517, 519 n.3 (M.D. Pa. 2017) (Conner, C.J.)).

### a.   <u>Negligent Design</u>

Section 398 of the Restatement (Second) of Torts governs negligent design claims in Pennsylvania.  See <u>Lance v. Wyeth</u>, 685 A.3d 434, 453 n.24 (Pa. 2014). Section 389 creates a duty for manufactures to exercise reasonable care in adopting designs for their products that do not endanger the probable consumers of their products.  See RESTATEMENT (SECOND) OF TORTS § 398 (AM. L. INST. 1965). Defendants attack Allstate's negligent design claim on the same grounds as Allstate's claim for strict liability design defect: the supposed lack of evidence Sherri Koons accidentally manipulated the burner control knobs.  (See Doc. 31 at 6-9).  But, as discussed *supra*, Allstate has proffered sufficient evidence to create a genuine dispute of fact as to the cause of the fire.  Hence, we will deny defendants' motion for summary judgment on Allstate's negligent design claim.

### b.   <u>Negligent Failure to Warn</u>

Section 388 of the Restatement (Second) of Torts governs negligent failure-to-warn claims in Pennsylvania.  See <u>O'Keefe v. Sprout-Bauer, Inc.</u>, 970 F.2d 1244, 1256 (3d Cir. 1992); <u>Baldino v. Castagna</u>, 478 A.2d 807, 810 (Pa. 1984).  Section 388 imposes a duty to "exercise reasonable care to inform those for whose use [their products] are supplied of the facts which make it likely to be dangerous."  <u>Baldino</u>,

478 A.2d at 810 (citing Incollingo v. Ewing, 282 A.2d 206, 220 n.8 (Pa. 1971) (citing

RESTATEMENT (SECOND) OF TORTS § 388 (AM. L. INST. 1965))).

Allstate's negligent failure-to-warn claim fails on the same ground as its strict

liability failure-to-warn claim—causation.  As discussed *supra*, Allstate has failed to

adduce any evidence that defendants' failure to warn consumers about the risk of

accidental manipulation of the burner control knobs caused the fire at the Koonses'

home.  Mere speculation is not enough for a reasonable jury to find a violation of

defendants' duty to warn caused the fire at the Koonses' home.  See Berckeley, 455

F.3d at 201.  Consequently, we will grant defendants summary judgment on

Allstate's negligent failure-to-warn claim.

### 3.   *Count III: Breach of Warranties*

Allstate's complaint asserts the fire allegedly caused by the Koonses' stove

breached "any and all express warranties" and Pennsylvania's implied warranties

of fitness for a particular purpose and merchantability.  (See Doc. 1-2 ¶¶ 29-31).

Defendants contend all of Allstate's breach of warranty claims are barred by

Pennsylvania's statute of limitations on breach of warranty claims.  (See Doc. 31 at

12-14 (citing 13 PA. CONS. STAT. § 2725)).  Allstate appears to concede it lacks a

viable claim under the stove's express warranty because they offer no supporting

evidence, merits arguments, or even mention the existence of a breach of express

warranty claim in their summary judgment materials.  (See Doc. 37 ¶¶ 48-50; Doc.

36-1 at 13-14).  Accordingly, we find Allstate has abandoned its breach of express

warranty claim.  See Wolf, 509 F.Supp.3d at 223; Malibu Media, 381 F. Supp. 3d at

361.  Allstate does insist it possesses a valid claim for breach of the implied

warranties of fitness for a particular purpose and merchantability.  (See Doc. 36-1 at 13-14).  However, Allstate offers no evidence, merits argument, or legal citations contesting the application of the statute of limitations.  (See id.)  We view Allstate's failure to meaningfully contest the defendants' statute-of-limitations argument as also abandoning the breach of implied warranty claim.  See Wolf, 509 F.Supp.3d at 223; Malibu Media, 381 F. Supp. 3d at 361.

Nonetheless, assuming *arguendo* Allstate has not abandoned its breach of implied warranty claims, we concur that the claims are time barred.  Pennsylvania law requires plaintiffs to bring breach of warranty claims within four years of the claim's accrual.  See 13 PA. CONS. STAT. § 2725(a).  Breach of warranty claims accrue "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  See id. § 2725(b).  Pennsylvania courts hold implied warranties do not apply to the future performance of goods and, therefore, accrue on tender of delivery.  See Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div., 625 A.2d 1172, 1173, 1178 (Pa. 1993).  Thus, any breach of warranty claim related to an implied warranty covering the Koonses' stove must have been brought within four years of the date of the stove's purchase.  See Antz v. GAF Materials Corp., 719 A.2d 758, 760 (Pa. Super. Ct. 1998); Patton v. Mack Trucks, Inc., 519 A.2d 959, 962, 967 (Pa. 1986).  The latest Koonses could have purchased their stove was 2012.  (See Doc. 32 ¶ 47).  The present lawsuit was filed in January 2020, roughly eight years later.  (See Doc. 32 ¶ 51).  The statute of limitations bars Allstate from advancing any

claim related to the breach of an implied warranty.  Accordingly, we will grant

defendants' motion for summary judgment on Allstate's breach of warranty claim.

**IV.**   <u>**Conclusion**</u>

We will grant in part and deny in part defendants' motion for summary

judgment and grant in part and deny in part defendants' motions *in limine*.  An

appropriate order shall issue.


                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner
                                        United States District Judge
                                        Middle District of Pennsylvania


Dated:     March 28, 2022